STEVEN L. MARCHBANKS (SBN: 214686)
steve@premierlegalcenter.com
PREMIER LEGAL CENTER, A.P.C.
2550 Fifth Avenue, 9th Floor
San Diego, CA  92103
Phone:  (619) 235-3200; Fax: (619) 235-3300

ROBERT G. LOEWY (SBN 179868)
rloewy@rloewy.com
LAW OFFICE OF ROBERT G. LOEWY, P.C.
610 Newport Center Drive, Suite 1200
Newport Beach, California 92660
Phone: (949) 442-7103; Fax: (949) 242-5105

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| SHAUN SATER; MICHAEL BRIGHT; THOMAS DERRICK; SCOTT JOHNSON; TODD WIRTHLIN; individuals on behalf of themselves and all others similarly situated, <br><br>    Plaintiffs, <br><br>    v. <br><br> CHRYSLER GROUP LLC, a Delaware limited liability company; and DOES 1-100, inclusive, <br><br>    Defendants. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** <br><br> (1)  VIOLATION OF THE MAGNUSON-MOSS FEDERAL WARRANTY ACT; <br> (2)  BREACH OF STATE EXPRESS WARRANTIES; <br> (3)  BREACH OF STATE IMPLIED WARRANTIES; <br> (4)  VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT; <br> (5)  VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW; |

| | |
|---|---|
| (6) | VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT; |
| (7) | NEGLIGENCE – FAILURE TO WARN; |
| (8) | NEGLIGENCE; FAILURE TO TEST; |
| (9) | NEGLIGENT MISREPRESENTATION; AND |
| (10) | UNJUST ENRICHMENT |

Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

## PARTIES

1.    Shaun Sater is a resident of Wildomar, California in Riverside County.

2.    Michael Bright is a resident of San Mateo, California, located in San Mateo County.

3.    Thomas Derrick is a resident of China, Texas in Jefferson County.

4.    Scott Johnson is a resident of China Spring, Texas in McLennan County.

5.    Todd Wirthlin is a resident of Kalispell, Montana in Flathead County.

6.    Defendant Chrysler Group LLC ("Chrysler") is a limited liability company organized under the laws of the State of Delaware and headquartered in Auburn Hills, Michigan.  Chrysler's registered agent for service of process in California is CT Corporation System, at 818 West Seventh Street, Los Angeles, California 90017.

7.    The true names and capacities, whether individual, corporate, associates, or otherwise, of defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues these defendants by such fictitious names.

8.     All Defendants, including DOE Defendants, were at all relevant times acting pursuant to a joint enterprise in all respects pertinent thereto, and the acts of each Defendant are legally attributable to the other Defendants.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant Chrysler, on the other, are citizens of different states.

10.     This Court has jurisdiction over Chrysler because it is registered to conduct business in California; has sufficient minimum contacts in California; and intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its vehicles to render the exercise of jurisdiction by this Court proper and necessary. Moreover, Chrysler's wrongful conduct (as described herein) foreseeably affects consumers in California.

11.     Venue is proper in this District under 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

### THE DEFECT

12.     The following vehicles manufactured and sold by Chrysler in the United States (hereinafter, the "Class Vehicles"):

| MAKE | MODEL | MODEL YEARS | INCLUSIVE DATES OF MANUFACTURE |
|---|---|---|---|
| DODGE RAM | 2500 4x4 | 2008-2012 | February 14, 2008 to January 21, 2012 |

| DODGE RAM | 3500 4x4 | 2008-2012 | February 14, 2008 to December 22, 2012 |
|---|---|---|---|
| DODGE RAM | 3500 Chassis Cab 4x2 | 2008-2012 | February 14, 2008 to December 22, 2012 |
| DODGE RAM | 4500/5500 4x4 | 2008-2012 | February 20, 2007 to December 22, 2012 |

suffer from a uniform design defect affecting the safety and value of the vehicles. Specifically, the left (driver's side) tie rod ball stud is defective as it too weak to withstand normal use and will eventually fracture under normal driving conditions (the "Defect").  The weakness is exacerbated by the defective design of the Cross Car steering linkage system, which allows contact between the ball stud and the ball housing, thereby weakening the stud.

13.     The tie rod is a crucial link in the vehicle's steering system.  A loose tie rod can cause a vehicle to have excessive shimmy, or even worse, a "death wobble," which is an extreme and sometimes uncontrollable front end vibration that usually starts when one tire hits a groove or bump in the road and can only be controlled by bringing the vehicle to a stop.  A defective tie rod will also affect front end alignment and could cause a vehicle to suddenly pull to a particular side of the road.  Tie rods are also important suspension units, and therefore defective tie rods can cause uneven tire wear.

CHRYSLER'S EFFORTS TO DIAGNOSE AND REMEDY THE DEFECT
THROUGH A SERIES OF HALF-STEPS AND INEFFECTIVE RECALLS

14.     Shortly after releasing the 2008 model year Class Vehicles, Chrysler became aware of ball studs fracturing at a high rate necessitating left tie rod replacements.  Despite its awareness of the problem, Chrysler opted to conceal the existence of the Defect from Plaintiffs and the general public.

15.     In or about September 2010, Chrysler conducted a pilot program at the Saltillo Assembly Plant to study the effects of improved front end alignment on

the fore/aft left/right ball joint alignment.   Chrysler initially believed that misalignment between the left and right ball studs during the front-end alignment toe set process – whether during assembly or a service realignment – was causing a decreased available window of fore/aft ball joint articulation.  This decreased window, in turn, was forcing the left ball stud to articulate beyond its design window, resulting in fatigue over time.

16.    After concluding the study in December 2010, Chrysler determined that an enhanced toe alignment would result in better ball joint alignment and would mitigate the fatigue of the left ball stud.  Accordingly, in or around January 2011, Chrysler announced a safety recall (K28) for its model year 2008 to 2011 4500/5500 vehicles.  (A copy of Recall K28 is attached hereto as Exhibit 1 and incorporated herein).  At the time, Chrysler limited the recall to the 4500/5500 vehicles, not its more widely-sold 2500/3500 vehicles.   The recall instructed dealers to replace the left outer tie rod in all recalled vehicles.  In addition, in or about February 2011, Chrysler issued dealer service instructions for recall K28, which detailed how to set the toe and align the tie rod ends.

17.    In or about March 2011, Chrysler expanded its investigation of the tie rod problem to include the much more popular 2500/3500 vehicles and ultimately concluded that these vehicles also suffered from the same defect as the 4500/5500 vehicles.  Rather than issuing a recall for these vehicles, however, Chrysler simply disseminated enhanced instructions on the front end alignment process and how to orient the tie rods during the toe set procedure.

18.    On or about April 4, 2011, the National Highway Traffic Safety Administration ("NHTSA") advised Chrysler that it had commenced an investigation (PE11-009) regarding the outer steering tie rods for the 2008-2011 2500/3500 vehicles based on numerous customer complaints of left outer tie rod ball studs fracturing. There was no reported issue with the right outer tie rod.

19.     On or about June 28, 2011, based on the NHTSA investigation, Chrysler agreed to expand its K28 tie rod recall to include the 2500/3500 vehicles. Accordingly on or about August 15, 2011, Chrysler issued recall L16 to inspect the 2500/3500 vehicles for relative orientation and replace as required the left outer tie rod.  The recall also included a toe set procedure using an outer tie rod inclinometer tool.   (A copy of the recall notice L16 is attached hereto as Exhibit 2 and incorporated herein). To perform the recall, Chrysler instructed its dealers to measure the right and left tie rod angles, and if the difference in angle was more than 5°, the tie rod would be replaced. Chrysler agreed to provide enough left tie rod packages to service about 5% of the recalled vehicles (The decision to only replace 5% of the tie rods stands in stark contrast to the 4500/5500 K28 recall, in which Chrysler agreed to provide new left tie rods for all recalled vehicles).

20.     Unfortunately, the K28 and L16 recalls did not remedy the Defect and ball stud fractures continued at a high rate on all Class Vehicles.  Chrysler initially suggested that the repair instructions were unclear and that some misinterpretation could exist when inspecting the relative ball stud alignment of the driver side tie rod, possibly leading to over articulation and subsequent fracture of the tie rod ball stud.

21.     Ultimately, Chrysler decided to again recall all Class Vehicles.   On or about October 30, 2013, Chrysler issued recall N63 for the 4500/5500 vehicles, and in December 2013, Chrysler issued recall N49 for the 2500/3500 vehicles.  (A copy of the recall notices are attached hereto as Exhibits 3 and 4 and incorporated herein).

22.     In recall N63, Chrysler warned that the left tie rod ball stud may fracture causing a loss of directional control or crash without warning.  Chrysler then delivered this bad news:  "Chrysler intends to repair your vehicle free of charge. However, the parts required to provide a permanent remedy for this

condition are currently not available.  Chrysler is making every effort to obtain these parts as quickly as possible."

23.     In recall N49, Chrysler similarly warned that the left tie rod ball stud may fracture causing a loss of directional control or crash without warning.  Rather than telling vehicle owners that the parts were unavailable, however, Chrysler simply told owners to contact their dealer starting on January 6, 2014 to schedule a service appointment.

24.     In addition, Chrysler notified its dealers to include an inspection of the steering linkage as part of recall N49.  Chrysler further told the dealers that they would receive enough replacement steering linkages to service about 10% of the affected vehicles. Chrysler also required its dealers to perform the steering linkage repair on all unsold vehicles before retail delivery.

25.     On or about March 7, 2014, Chrysler secretly advised its dealers that there was an order restriction on the parts needed for the recalls.  (A copy of the dealer notice is attached hereto as Exhibit 5 and incorporated herein).  Chrysler reported that it was investigating a concern regarding the difficulty of installing the part due to the misalignment of the ball stud.  Chrysler stated that it was in the process of recertifying the part and developing a new part number, which it expected to be available for distribution in limited quantities beginning the week of April 14, 2014.

26.     To date, no recall repairs have been performed for Plaintiffs – despite their repeated requests to schedule such appointments.  The dealers have advised Plaintiffs that they are unable to schedule repairs while the parts are on back order.

27.     As of the date of this filing, Chrysler has issued multiple recalls for the Defect, but has yet to solve the problem and does not even have enough of the necessary parts to begin the repairs.  Moreover the Defect is unrepairable, due to design restrictions on the size of the ball stud.  Moreover, as of today, Chrysler has failed to offer owners of Class Vehicles any reimbursement for loss of use of the

Class Vehicles, diminution in value of the Class Vehicles, or reimbursement of amounts previously spent repairing the Defect or resulting damage in Class Vehicles.

28.   Beginning with Model Year 2013, Chrysler redesigned its 2500/3500/4500/5500 vehicles with a new reciprocating ball steering gear that gives greater durability and control with redesigned steering knuckles, ball joints, and more robust steering linkages.

<u>CHRYSLER'S SALES PRACTICES</u>

29.   Chrysler markets, distributes, and warrants the Class Vehicles in the United States.

30.   Chrysler uniformly advertises the Class Vehicles as safe and reliable vehicles.

31.   Chrysler provides owners and lessees of Class Vehicles with a New Vehicle Limited Warranty. The New Vehicle Limited Warranty states that Chrysler will repair or replace, free of charge, any part that is defective in material or workmanship under normal use for 3 years or 36,000 miles, whichever comes first. A copy of the warranty, which is substantially identical in language for all Class Vehicles, is attached hereto as Exhibit 6 and incorporated herein by reference.

32.   Prior to announcing the recalls, Chrysler actively concealed the Defect from consumers.  Even when an owner or a lessee of a Class Vehicle specifically asked whether his or her vehicle suffered from a known problem, Chrysler's policy was to deny that there was a known problem and to continue concealing the Defect.

33.   Chrysler knew that potential car buyers and lessees would deem the Defect to be material such that reasonable consumers who knew of the Defect either would have paid less for the Class Vehicles or would not have purchased or leased a Class Vehicle at all.

34.   As a result of Chrysler's practices, Plaintiffs and Class members purchased Class Vehicles they otherwise would not have purchased, paid more for

those vehicles than they would have paid, unnecessarily paid – and will continue to pay – repair costs as a result of the Defect, and suffered diminution of those vehicles' resale value.

35.   Plaintiffs are informed and believe and thereon allege that the discovery of the Defect and the resulting publicity in connection therewith has damaged the reputation of the Class Vehicles for safety and significantly diminished the value of the vehicles for re-sale.

<u>FACTS SPECIFIC TO PLAINTIFFS</u>

36.   Plaintiff Shaun Sater purchased a 2009 Dodge Ram 2500, VIN 3D3KS28L39G536860, from Frahm Dodge in Norco, California on or about January 13, 2010.  After receiving recall N49 from Chrysler in or about December 2013, Sater called DCH Dodge of Temecula to schedule an appointment and was told the parts were ordered and the dealer would call when they arrived.  After two months, Sater called the dealer for an update and was told that the parts still had not arrived.  The dealer did request that Sater bring the vehicle in for an inspection. Sater did as instructed, and after the inspection, he was told that the replacement parts were still on back order.  On or about March 24, 2014, the vehicle's left tie rod broke while driving, and the tires went in opposite directions.  The vehicle was then towed to the dealer, where Sater was advised that the parts had recently arrived but had been sent back to Chrysler due to a recall.  Sater was then forced to pay over $1000 out of his own pocket to get the vehicle drivable again, yet he still cannot drive the vehicle over 50 mph without experiencing the death wobble.  More work is needed on the front end to make the vehicle safe and functional.  Sater does not feel safe in the vehicle.

37.   Plaintiff Michael Bright purchased a 2010 Dodge Ram 2500, VIN 3D7UT2CLXAG16589, on or about July 16, 2010 from Dublin Dodge in Dublin, California.  In or about December 2013, Bright received recall notice N49 and contacted Burlingame Dodge in Burlingame, California to schedule an

appointment for the repair.  The dealership advised Bright on multiple occasions that the replacement parts were unavailable and that there was not yet a date when the parts would be ready.  On at least two separate occasions, Bright has experienced loss of steering and control due to a failure of the tie rod joint.

38.   Plaintiff Thomas Derrick purchased a 2010 Dodge Ram 3500, VIN 3D73Y4HLXAG142824, on or about May 18, 2013 from his uncle, Roy Morrell, the original purchaser.  In or about December 2013, Derrick received recall notice N49 and contacted Sour Lake Motor Co. in Sour Lake, Texas to schedule an appointment for the repair.  The dealer informed Derrick that the replacement parts were currently unavailable and would not be available until April 6, 2014. Subsequently, the dealer advised Derrick that the replacement parts had been recalled and that a date for the repair was unknown.  As a result of the Defect, Derrick has experienced excessive play in the steering column, and excessive wear on the steering damper, drag link, steering box, pitman arm and tires.

39.   Plaintiff Scott Johnson purchased a 2010 Dodge Ram 2500, VIN 3D7UT2CL0AG176737, on or about November 10, 2011, from Benny Boyd Dodge in Lampasas, Texas.  After receiving recall notice N49 in or about December 2013, Johnson contacted Benny Boyd Chrysler Dodge in Lampasas, Texas and Waco Dodge in Waco, Texas.  Both dealerships advised Johnson that they could not give him a date when they would have the parts needed to repair his vehicle.

40.   Plaintiff Todd Wirthlin purchased a 2011 Dodge Ram 3500, VIN 3D73Y4HL6BG548973 on or about May 23, 2011 from Larry H. Miller Dodge in Sandy, Utah.  In addition, he purchased a 2012 Dodge Ram 3500, VIN 3C63DRML1CG318677 on or about December 10, 2012 from Larry H. Miller Dodge in Sandy, Utah.  In addition, he purchased a 2012 Dodge Ram 3500, VIN 3C63D3MLOCG245458 on or about May 25, 2013 in Layton, Utah.  After receiving recall notices N49 in or about December 2013 from Chrysler, Wirthlin

contacted Don K Dodge in Whitefish, Montana to schedule an appointment for the repair on all three vehicles.  The dealer advised Wirthlin that the replacement parts were currently unavailable for all three vehicles and would not be available for at least 28 weeks.

## CLASS ACTION ALLEGATIONS

41.   This action has been brought and may properly be maintained on behalf of the Class proposed below under Federal Rule of Civil Procedure Rule 23.

42.   **Definition**.  Plaintiffs bring this action on behalf of themselves and a class of persons initially defined as follows: "All current or former purchasers and lessees of the Class Vehicles who resided in or purchased or leased their vehicles in the United States (other than for purposes of resale or distribution) on or after June 10, 2009 (the "Class")."  Alternatively, the following subclasses are defined as follows:

   a.   All current or former purchasers and lessees of the Class Vehicles who resided in or purchased or leased their vehicles in California (other than for purposes of resale or distribution) on or after June 10, 2009 (the "California Subclass");

   b.   All current or former purchasers and lessees of the Class Vehicles who resided in or purchased or leased their vehicles in Texas (other than for purposes of resale or distribution) on or after June 10, 2009 (the "Texas Subclass");

   c.   All current or former purchasers and lessees of the Class Vehicles who resided in or purchased or leased their vehicles in Utah (other than for purposes of resale or distribution) on or after June 10, 2009 (the "Utah Subclass");

43.   Excluded from the Class and subclasses are Chrysler; any affiliate, parent, or subsidiary of Chrysler; any entity in which Chrysler has a controlling interest; any officer, director, or employee of Chrysler; any successor or assign of

Chrysler; any Judge to whom this action is assigned; and any owners or lessees of Class Vehicles that were not distributed for sale or lease in the United States.

44.     Also excluded from the Class and subclasses are individuals who have claims for personal injury resulting from the Defect.

45.     **Numerosity**. Members of the Class and subclasses are so numerous that their individual joinder herein is impracticable.  Plaintiffs estimates that there are in excess of 200,000 Class members.  In addition, Plaintiffs estimate that there are in excess of 1,000 in each subclass.  Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

46.     **Existence and predominance of common questions.** Common questions of law and fact exist as to all members of the Class and subclasses and predominate over questions affecting only individuals. These common questions include the following:

    a.  Whether Chrysler provided Plaintiffs and Class members with a vehicle inherently defective in its tie rods design, manufacture and assembly;

    b.  Whether the Defect would be considered material by a reasonable consumer;

    c.  Whether Chrysler had a duty to disclose the Defect to Plaintiffs and other Class members;

    d.  Whether Chrysler breached the express warranty by refusing to timely provide warranty coverage for the Defect;

    e.  Whether the Defect has diminished the value of the Class Vehicles;

    f.  Whether the Defect is capable of being repaired;

    g.  Whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to restitution or a preliminary and/or permanent injunction; and

h. Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief.

47. **Typicality**. Plaintiffs' claims are typical of the claims of the Class, because, among other things, Plaintiffs purchased or leased a Class Vehicle that contained the same Defect found in all other Class Vehicles.

48. **Adequacy**. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

49. **Superiority**. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Chrysler economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing myriad actions arising from the defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

50. In the alternative, the Class may be certified because:

a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Chrysler;

b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. Chrysler has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## COUNT I

(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq.;

On Behalf of Named Plaintiffs and the Class)

51.    Plaintiffs reallege as if fully set forth herein each and every allegation set forth above.

52.    Plaintiffs and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301.

53.    Chrysler is a "supplier" and "warrantor" within the meaning of §2301.

54.    The Class Vehicles are "consumer product[s]" within the meaning of §2301.

55.    Chrysler's express warranties are "written warrant[ies]" within the meaning of §2301(6).

56.    Chrysler made implied warranties arising under state law regarding the Class Vehicles within the meaning of §2301(7).

57.    Chrysler's warranties pertained to consumer products costing more than $25.

58.    Chrysler violated the Magnuson-Moss Federal Warranty Act by failing to comply with the express and implied warranties it made to the Class by, among other things: (a) providing a three-year/36,000 mile New Vehicle Limited

Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee; (b) selling and leasing Class Vehicles that were defective in material and workmanship, requiring repair or replacement within the warranty periods; and (c) refusing to honor the warranties by repairing or replacing, free of charge, the Defect.

59.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims in this Count, whether premised on express or implied warranty, is procedurally and substantively unconscionable under federal law and the applicable state common law.

60.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims in this Count is tolled under equitable doctrines.

61.    Chrysler has been afforded a reasonable opportunity to cure its breach of warranties.

62.    As a direct and proximate result of Chrysler's breach of written warranties, Plaintiffs and Class members sustained damages and other losses in an amount to be determined at trial. Chrysler's conduct damaged Plaintiffs and Class members, who are entitled to recover damages, consequential damages, specific performance, diminution in value of the Class Vehicles, costs, attorneys' fees, rescission, and/or other relief as appropriate.

## COUNT II

(Breach of State Express Warranties

On Behalf of Named Plaintiffs and the California, Texas and Utah Subclasses)

63.    Plaintiffs reallege as if fully set forth herein each and every allegation set forth above.

64.     Chrysler's actions, as alleged above, violate state express warranty statutes in the states of California (Cal. Com. Code §2313), Texas (Tex. Bus. & Com. Code §2.313), and Utah (§70A-2-313).   This count is thus brought collectively on behalf of the California, Texas and Utah Subclasses, as well as other members of the Class who are residents in other states as the Court determines to be appropriate, in which the statutes outlining the cause of action for a breach of express warranty are substantially the same.

65.     Chrysler marketed, sold and distributed the Class Vehicles to Plaintiffs and the members of the respective state Subclasses in the regular course of its business.

66.     Chrysler expressly represented and warranted, by and through statements, descriptions and affirmations of fact made by it and its authorized agents and representatives that the Class Vehicles were safe for ordinary use.

67.     Further, Chrysler issued a written warranty to Plaintiffs and the members of the subclasses in which Chrysler warranted that the Class Vehicles were free from defects in material and workmanship.

68.     In reliance upon these express warranties, Plaintiffs and the members of the subclasses purchased or leased the Class Vehicles.

69.     The Class Vehicles failed to comply with the express warranties because they suffered from inherent design and/or manufacturing defects that, from the date of purchase forward, rendered the Class Vehicles unfit for their intended use and purpose and made them not free from defects in material and workmanship.

70.     Chrysler knew or had reason to know that the Class Vehicles did not conform to the express representations because the vehicles were neither as safe, usable nor free from defects as represented.

71.     Plaintiffs notified Chrysler of the breach within a reasonable time and/or was not required to do so because affording Chrysler a reasonable opportunity to cure its breach of written warranty would have been futile.  Chrysler

was also on notice of the Defect from the complaints and service requests it received from Class members, from repairs and/or replacements of the Defect, and through its own maintenance records.

72.     As a direct and proximate cause of Chrysler's breach, Plaintiffs and the other subclass members have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, that is, the difference between the value of the vehicle as promised and the value of the vehicle as delivered. Additionally, Plaintiffs and the other Class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

73.     Plaintiffs and the other Class members are entitled to legal and equitable relief against Chrysler, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## <u>COUNT III</u>

(Breach of State Implied Warranties

On Behalf of Named Plaintiffs and the California, Texas and Utah Subclasses)

74.     Plaintiffs reallege as if fully set forth herein each and every allegation set forth above.

75.     Chrysler's actions, as alleged above, violate implied warranty of merchantability statutes in the states of California (Cal. Civ. Code §1792), Texas (Tex. Bus. & Com. Code §2.314), and Utah (§70A-2-314).  This count is thus brought collectively on behalf of the California, Texas and Utah Subclasses, as well as other members of the Class who are residents in other states as the Court determines to be appropriate, in which the statutes outlining the cause of action for a breach of implied warranty are substantially the same.

76.     Chrysler marketed, sold and distributed the Class Vehicles to Plaintiffs and the members of the respective state Subclasses in the regular course of its business.

77.     Chrysler impliedly warranted, by and through statements, descriptions and affirmations of fact made by it and its authorized agents and representatives that the Class Vehicles were of merchantable quality, would pass without objection in the trade or business under the contract description, were safe for use, and were free of material defects and fit for the ordinary purposes for which they were to be used.

78.     In reliance upon these implied warranties, Plaintiffs and the members of the subclasses purchased or leased the Class Vehicles.

79.     The Class Vehicles failed to comply with the implied warranties because they suffered from inherent design and/or manufacturing defects that, from the date of purchase forward, rendered the Class Vehicles unfit for their intended use and purpose and made them not free from defects in material and workmanship.

80.     Chrysler knew or had reason to know that the Class Vehicles did not conform to the implied warranties because the vehicles were neither as safe, usable nor free from defects as represented.

81.     Plaintiffs notified Chrysler of the breach within a reasonable time and/or was not required to do so because affording Chrysler a reasonable opportunity to cure its breach of written warranty would have been futile.  Chrysler was also on notice of the Defect from the complaints and service requests it received from Class members, from repairs and/or replacements of the Defect, and through its own maintenance records.

82.     As a direct and proximate cause of Chrysler's breach, Plaintiffs and the other subclass members have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, that is, the difference between the value of the vehicle as promised and the value of the vehicle as

delivered. Additionally, Plaintiffs and the other Class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

83.     Plaintiffs and the other Class members are entitled to legal and equitable relief against Chrysler, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT IV

(Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq*.

On Behalf of Plaintiffs Bright, Sater, and the California Subclass)

84.     Plaintiffs Bright and Sater, on behalf of themselves and the California Subclass, reallege as if fully set forth herein each and every allegation set forth above.

85.     Chrysler is a "person" under Cal. Civ. Code section 1761(c).

86.     Plaintiffs Bright and Sater and the other California Subclass members are "consumers" under Cal. Civ. Code section 1761(d).

87.     Plaintiffs Bright and Sater and the other California Subclass members engaged in "transactions" under Cal. Civ. Code section 1761(e), including the purchase or lease of Class Vehicles from Chrysler and the presentation of Class Vehicles for repair or replacement of the defect to Chrysler.

88.     As set forth herein, Chrysler's acts, policies, and practices undertaken in transactions intended to result and which did result in the sale or lease of Class Vehicles, violate sections 1770(a)(5), (a)(7), (a)(9), (a)(14), and (a)(16) of the CLRA in that: (a) Chrysler represented that its goods have sponsorship, approval, characteristics, uses, or benefits which they do not have; (b) Chrysler represented that its goods are of a particular standard, quality, or grade, but are of another; (c) Chrysler advertised its goods with intent not to sell them as advertised; (d) Chrysler represented that a transaction conferred or involved rights, remedies,

or obligations which it did not have or involved; and (e) Chrysler represented that its goods were supplied in accordance with a previous representation when they were not.

89.    The existence of the Defect is a material fact. Plaintiffs Bright and Sater and other California Subclass members were unaware of the Defect when they purchased or leased the Class Vehicles.  Consumers value reliability and dependability of automobiles and automobile parts, especially concerning vital protection of tie rod components in the Class Vehicles.  Had they known of the Defect, Plaintiffs Bright and Sater and the other California Subclass members would not have purchased or leased the Class Vehicles, or would have done so only at lower prices.

90.    Reasonable consumers expect, among other things: (a) New vehicles, including Class Vehicles, to have tie rods that will be remain operable for the duration of the car's reasonable life and operate effectively; (b) New vehicles, including Class Vehicles, to function properly for the duration of the warranty and that defects will be covered under warranty.

91.    Chrysler had a duty to disclose the defect in the Class Vehicles for various reasons, including that: (a) the Defect's existence is contrary to Chrysler's representations and consumers' expectations; (b) Chrysler's concealment of the Defect and/or Chrysler's failure to disclose the Defect was likely to deceive reasonable consumers; (c) Chrysler intentionally concealed the Defect with the intent to defraud consumers; and (d) Chrysler's concealment of the Defect harmed Plaintiffs and other Class members.

92.    As a result of Chrysler's practices, Plaintiffs Bright and Sater and the other Subclass members have suffered harm.

93.    Pursuant to the provisions of Cal. Civ. Code §1780, Plaintiffs seeks an order enjoining Chrysler from the unlawful practices described herein, a

1  declaration that Chrysler's conduct violates the CLRA, and attorneys' fees and

2  costs of litigation.

3       94.    Plaintiffs have concurrently served herewith by certified mail the

4  demand letter required by Cal. Civil. Code §1781(d), a true and correct copy of

5  which is attached hereto as Exhibit 6.

6  <u>**COUNT V**</u>

7  (Violation of California Business and Professions Code §17200 *et seq*.

8  On Behalf of Plaintiffs Bright, Sater, and the California Subclass)

9       95.    Plaintiffs Bright and Sater, on behalf of themselves and the California

10  Subclass, reallege as if fully set forth herein each and every allegation set forth

11  above.

12       96.    Chrysler's acts and practices, as alleged in this Complaint, constitute

13  unlawful, unfair and/or fraudulent business practices, in violation of the Unfair

14  Competition Law, Cal. Bus. & Prof. Code §17200 *et seq*.

15       97.    The business practices engaged in by Chrysler that violate the Unfair

16  Competition Law include failing to disclose the Defect at the point of sale, the point

17  of repair, or otherwise.

18       98.    Chrysler engaged in unlawful business practices by violating the

19  Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750 et seq.; the

20  Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq.; and by engaging in

21  conduct, as alleged herein, that breaches the express and implied warranties.

22       99.    Chrysler engaged in unfair business practices by, among other things:

23  (a) Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or

24  substantially injurious to members of the California Subclass; (b) Engaging in

25  conduct that undermines or violates the stated policies underlying the CLRA and

26  the Magnuson-Moss Warranty Act, each of which seeks to protect consumers

27  against unfair and sharp business practices and to promote a basic level of honesty

28  and reliability in the marketplace; and (c) Engaging in conduct that causes a

substantial injury to consumers, not outweighed by any countervailing benefits to consumers or to competition, which the consumers could not have reasonably avoided.

100.   Chrysler engaged in fraudulent business practices by engaging in conduct that was and is likely to deceive consumers acting reasonably under the circumstances.

101.   As a direct and proximate result of Chrysler's unfair and fraudulent business practices as alleged herein, Plaintiffs Bright and Sater and other California Subclass Members suffered injury-in-fact and lost money or property, in that they purchased or leased a vehicle they otherwise would not have purchased, paid for repairs, and are left with Class Vehicles of diminished value and utility because of the Defect. Meanwhile, Chrysler has sold and leased more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

102.   Plaintiffs Bright and Sater and California Subclass members are entitled to equitable relief including restitution of all fees, disgorgement of all profits accruing to Chrysler because of its unfair, fraudulent, and deceptive practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Chrysler from its unfair, fraudulent, and deceitful activity.

## COUNT VI

(Violation of Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §17.46 *et seq*.; On Behalf of Plaintiffs Derrick, Johnson, and the Texas Subclass)

103.   Plaintiffs Derrick and Johnson, on behalf of themselves and the Texas Subclass, reallege as if fully set forth herein each and every allegation set forth above.

104.   Plaintiffs Derrick and Johnson and each member of the Texas Subclass is a "consumer" as defined in the Texas Deceptive Trade Practices Act ("DTPA").

105.   Chrysler violated the following provisions of the DTPA:

    a.   Tex. Bus. & Com. Code §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(7), §17.46(b)(12), §17.46(b)(20), and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs and each member of the Texas Subclass;

    b.   Tex. Bus. & Com. Code §17.50(2): breach of express warranty, as defined in §2.313 of the Tex. Bus. & Com. Code;

    c.   Tex. Bus. & Com. Code §17.50(2): breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987);

    d.   Tex. Bus. & Com. Code §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Tex. Bus. & Com. Code;

    e.   Tex. Bus. & Com. Code §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

106.   The limited remedies in Chrysler's warranties failed of their essential purpose and deprived Plaintiffs Derrick and Johnson and each member of the Texas Subclass of the substantial value of the bargain because Chrysler did not correct the Defect within a reasonable time.  Tex. Bus. & Com. Code §2.719.

107.   Chrysler's violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA.

108.   Chrysler's conduct was a producing and/or proximate cause of actual damages to Plaintiffs Derrick and Johnson and each member of the Texas Subclass Plaintiff.

# COUNT VII

(Negligence – Failure to Warn

On Behalf of Named Plaintiffs and the Class)

109.    Plaintiffs reallege as if fully set forth herein each and every allegation set forth above.

110.    At all times referenced herein, Chrysler was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Class Vehicles to Plaintiffs and the Class.

111.    At all times material hereto, the use of the Class Vehicles in a manner that was intended and/or reasonably foreseeable by Defendants involved substantial risk of premature failure of the left tie rod and safety risks to occupants of Class Vehicles.

112.    At all times the risk of premature failure and potential danger was known or knowable by Chrysler, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

113.    Chrysler, as the manufacturer of the Class Vehicles, had a duty to warn Plaintiffs and the Class of all dangers associated with the intended use.

114.    Chrysler was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and lessees of the Class Vehicles, including Plaintiffs, about the risks, potential dangers and defective condition of the Class Vehicles.

115.    Chrysler knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using the Class Vehicles, and knew that Plaintiffs and Class members could not reasonably be aware of those risks. Chrysler failed to exercise reasonable care in providing the Class with adequate warnings.

116.   As a direct and proximate result of Chrysler's failure to adequately warn consumers about the risks and dangers of using the Class Vehicles, Plaintiffs and the Class have suffered damages as set forth herein.

<u>**COUNT VIII**</u>

(Negligence – Failure to Test

On Behalf of Named Plaintiffs and the Class)

117.   Plaintiffs reallege as if fully set forth herein each and every allegation set forth above.

118.   Chrysler did not perform adequate testing on the Class Vehicles, which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiffs and the Class.

119.   Adequate testing would have revealed the serious deficiencies in the Class Vehicles in that it would have revealed the Defect.

120.   Chrysler had and continues to have a duty to exercise reasonable care to properly design—including the duty to test—the Class Vehicles that it introduced into the stream of commerce.

121.   Chrysler breached these duties by failing to exercise ordinary care in the design, specifically the testing of the Class Vehicles, which it introduced into the stream of commerce, because Chrysler knew or should have known that the Class Vehicles suffered from the Defect.

122.   Chrysler knew or should have known that consumers such as Plaintiffs would foreseeably suffer economic damages or injury, and/or be at an increased risk of suffering damage and injury, as a result of Defendants' failure to exercise ordinary care in the design of the Class Motors by failing to conduct appropriate testing.

123.   By reason of the foregoing, Plaintiffs and the Class experienced and/or are at risk of experiencing financial damage and injury.

124.   As a direct and proximate result of Chrysler's failure to test the Class Vehicles designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised, supplied and/or sold by Chrysler, Plaintiffs and the Class have suffered damages.

### COUNT IX

(For Negligent Misrepresentation

On Behalf of Named Plaintiffs and the Class)

125.   Plaintiffs reallege as if fully set forth herein each and every allegation set forth above.

126.   Chrysler made material misrepresentations of fact to Plaintiffs and the Class concerning the quality and durability of the Class Vehicles.

127.   At the time the representations were made, Defendants knew, or by the exercise of reasonable care, should have known that the statements were false and that the Class Vehicles suffered from the Defect, as detailed above.

128.   Chrysler made such claims about the Class Vehicles with the intent to induce Plaintiffs and Class members to purchase Class Vehicles.

129.   Plaintiffs and Class members justifiable relied upon Chrysler's misrepresentations about the quality and durability of the Class Vehicles.

130.   Plaintiffs and Class members have suffered harm as the result of Defendants' misrepresentations and omissions of material fact.

### COUNT X

(For Unjust Enrichment

On Behalf of Named Plaintiffs and the Class)

131.   Plaintiffs reallege as if fully set forth herein each and every allegation set forth above.

132.   Chrysler has been, and continues to be, unjustly enriched, to the detriment of and at the expense of Plaintiffs and Class members, as a result of its conduct directed against Plaintiffs and the Class as a whole, including the collection

of money from the sale of Class Vehicles and the avoidance of or refusal to incur expenses associated with repair of said defective vehicles.

133.   Chrysler has been unjustly benefitted through the unlawful or wrongful collection of money from the sale of Class Vehicles, and continues to so benefit to the detriment and at the expense of Class members.

134.   Accordingly, Chrysler should not be allowed to retain the proceeds from the benefits conferred up on it by Plaintiffs and Class members, who seek disgorgement of Chrysler's unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and seek restitution for the benefit of Plaintiffs and Class members, in an equitable and efficient fashion as the Court deems just and proper.

135.   Plaintiffs and Class members are entitled to the imposition of a constructive trust upon Chrysler such that its unjust enrichment, unjust benefit, and ill-gotten gains may be allocated and distributed equitably by the Court to and for the benefit of Plaintiffs and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class members, prays for judgment as follows:

a.   For an order certifying the Plaintiffs Class and appointing Plaintiffs and his counsel to represent the Class;

b.   For an order awarding Plaintiffs and the members of the Class damages, consequential damages, specific performance, and/or rescission;

c.   For an order awarding Plaintiffs and the members of the Class restitution and disgorgement of profits, or other equitable relief as the Court deems proper;

d.   For an order enjoining Chrysler from continuing to engage in unlawful business practices as alleged herein;

e.  For an order awarding Plaintiffs and the members of the Class pre-judgment and post-judgment interest;

f.  For an order awarding Plaintiffs and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

g.  For an order imposing a constructive trust over the revenues from sales of and resulting profits received by Defendant as a result of its wrongful conduct.

h.  For an order awarding such other and further relief as this Court may deem just and proper.

## **<u>JURY TRIAL DEMANDED</u>**

Plaintiffs demand a trial by jury on all issues so triable.


Dated:  April 4, 2014                    PREMIER LEGAL CENTER, A.P.C..


                                         By:_____/s/Steven L. Marchbanks_____
                                                   Steven L. Marchbanks
                                         Attorneys for Plaintiffs