Eric H. Gibbs (SBN 178658)
Dylan Hughes (SBN 209113)
David Stein (SBN 257465)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com
ds@classlawgroup.com

Stuart A. Davidson (*pro hac vice*)
Mark Dearman (*pro hac vice*)
Elizabeth A. Shonson (*pro hac vice*)
Janine D. Arno (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: 561/750-3000
Fax: 561/750-3364
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
eshonson@rgrdlaw.com
jarno@rgrdlaw.com

*Attorneys for Plaintiffs*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| JEFF LOOPER, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>FCA US LLC, f/k/a CHRYSLER GROUP LLC, *et al.*,<br><br>          Defendants. | Case No. 5:14-cv-00700-VAP-DTB<br><br>**REDACTED**<br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>Date: October 24, 2016<br>Time: 2:00 p.m.<br>Judge: Hon. Virginia A. Phillips<br>Courtroom: 780 |

# **TABLE OF CONTENTS**

I.   **INTRODUCTION** ...................................................................................1

II.  **STATEMENT OF FACTS** .....................................................................3

    The Defect in Class Vehicles ...................................................................3

    ███████████████████████████████. .......................4

    ████████████████████. ............................................5

    ████████████████████████████...................6

    Plaintiffs Bright and Johnson Bought Class Vehicles in 2010..........................7

    ██████████████████████.............................7

    ████████████████████████. .......................9

    Plaintiff Looper Bought His Class Vehicle in June 2013. ...............................11

    ████████████████████..........................................11

    The Aftermath................................................................................12

    The Procedural History of Chrysler's Summary Judgment Motion ...............13

III. **ARGUMENT** ........................................................................................13

    Mr. Johnson's Claim Is Not Barred by the Statute of Limitations. .................13

    Mr. Johnson Has Proof of Reliance on Chrysler's Omission...........................16

    1.   The Dealership's Contract Does Not Bar a Claim Against Chrysler. .........16

    2.   There Is Substantial Evidence of Reliance on Chrysler's Omission...........19

    Mr. Johnson May Recover Benefit of the Bargain Damages...........................20

    The Issues Raised in Chrysler's Motion That Are Not in Dispute. .................23

    1.   Plaintiffs Do Not Contest That Repairs Were Ultimately Provided. ..........23

i

2.  Mr. Johnson Is Not Pursuing an "Unconscionable Conduct" Claim. ..........24

3.  Mr. Johnson Is Not Pursuing Claims Related to Shimmy, Tire Wear, or His Truck Pulling to the Left. ................................................................24

**IV.   CONCLUSION** ....................................................................25

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

# TABLE OF AUTHORITIES

**Cases**

*Bishop v. Creditplex Auto Sales LLC*,
   2016 WL 3453633 (Tex. App. June 23, 2016) ............................................18

*Cal Fed Mortgage Co. v. Street*,
   824 S.W.2d 622 (Tex. App. 1991) ..............................................................14

*CAS, Ltd. v. TM Aviation Partners, LP*,
   2016 WL 4151455 (Tex. App. Aug. 4, 2016) ..............................................17

*Childs v. Haussecker*,
   974 S.W.2d 31 (Tex. 1998) ........................................................................14

*Cmty. Mgmt., LLC v. Cutten Dev., L.P.*,
   2016 WL 3554704 (Tex. App. June 28, 2016) ............................................17

*Cox Operating, LLC v. St. Paul Surplus Lines Ins.*,
   2012 WL 290027 (S.D. Tex. 2012) ............................................................21

*Dunbar Med. Sys. Inc. v. Gammex Inc.*,
   216 F.3d 441 (5th Cir. 2000) ......................................................................17

*Edwards v. Ford Motor Co.*,
   603 Fed.App'x 538 (9th Cir. 2015) ......................................................22, 23

*Fletcher v. Edwards*,
   26 S.W.3d 66 (Tex. App. 2000) ............................................................19, 20

*Garza v. CTX Mortg. Co., LLC*,,
   285 S.W.3d 919 (Tex. App. 2009) ..............................................................18

*Gill v. Boyd Distrib. Ctr.*,
   64 S.W.3d 601 (Tex. App. 2001) ................................................................20

*Guido v. L'Oreal, USA*,
   2013 WL 454861 (C.D. Cal. Feb. 6, 2013) ................................................21

*Haire v. Nathan Watson Co.*,
   221 S.W.3d 293 (Tex. App. 2007) ..............................................................17

*In re General Motors Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) .....................................2, 22, 23

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) .................................................15

*In re Toyota Motor Corp. Hybrid Brake Mktg. Litig.*,
   915 F. Supp. 2d 1151 (C.D. Cal. 2013)..............................................22

*In re Toyota Motor Corp. Unintended Acceleration Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010)..............................................21

*In re Toyota Motor Corp. Unintended Acceleration Litig.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ..........................................2, 22

*John v. Marshall Health Servs., Inc.*,
   91 S.W.3d 449 (Tex. App. 2002) .......................................................18

*LaGloria Oil & Gas Co. v. Carboline Co.*,
   84 S.W.3d 228 (Tex. App. 2001) .......................................... 2, 5, 14, 15

*Mercedes-Benz of N. Am., Inc. v. Dickenson*,
   720 S.W.2d 844 (Tex. App. 1986) .....................................................21

*Patterson v. McMickle*,
   191 S.W.3d 819 (Tex. App. 2006) .....................................................20

*Pecan Valley Nut Co. v. E.I. du Pont de Nemours & Co.*,
   15 S.W.3d 244 (Tex. App. 2000) .......................................................14

*Philips v. Ford Motor Co.*,
   2016 WL 693283 (N.D. Cal. 2016)....................................................23

*Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*,
   896 S.W.2d 156 (Tex. 1995) .............................................................17

*Ritchey v. Pinnell*,
   357 S.W.3d 410 (Tex. App. 2012) ...............................................17, 18

*Sater v. Chrysler Group LLC*,
   2014 WL 11412674 (C.D. Cal. 2014).................................................23

iv

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

*U.S. ex rel. Stebner v. Stewart & Stevenson Servs.*,

  305 F. Supp. 2d 694 (S.D. Tex. 2004) ...................................................................21

*Verde v. Stoneridge, Inc.*,

  137 F. Supp. 3d 963 (E.D. Tex. 2015) ...................................................................23

*Waller v. Hewlett-Packard Co.*,

  295 F.R.D. 472 (S.D. Cal. 2013).............................................................................22

*Willis v. Maverick*,

  760 S.W.2d 642 (Tex. 1988) ...........................................................................15, 16

*Woodlands Land Dev. Co., L.P. v. Jenkins*,

  48 S.W.3d 415 (Tex. App. 2001) ...........................................................................19

*Zbranek Custom Homes, Ltd. v. Allbaugh*,

  2015 WL 9436630 (Tex.App. Dec. 23, 2015) .......................................................17

**Statutes**

Tex. Bus. & Com. Code Ann. § 17.50(a)(2) ..............................................................16

Tex. Bus. & Com. Code Ann. § 17.565 ......................................................................14

**Regulations**

49 C.F.R. § 573.11(a)....................................................................................................14

49 C.F.R. § 573.6 ...........................................................................................................7

49 C.F.R. § 573.6(a), (b), (c)(8)(ii) .............................................................................14

## I.    **INTRODUCTION**

Plaintiffs filed their motion for class certification in August, summarizing the wealth of evidence developed over the past year, and explaining their liability theory in great detail. Yet Chrysler's summary judgment motion ignores the case detailed in Plaintiffs' class certification brief, focusing instead on more general allegations from the operative complaint. As explained in Section II-K below, during the parties' pre-filing meet and confer, Plaintiffs offered to help avoid a misdirected summary judgment motion by either amending their complaint or by responding to requests for admission. Chrysler was not amendable to Plaintiffs' proposed solutions, and Plaintiffs now oppose Chrysler's summary judgment motion.

What Chrysler's motion ignores is that Plaintiffs' case rests on substantial evidence that Chrysler discovered a safety defect in its RAM trucks ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Only in 2014 and 2015, after trucks continued to fail and there had been more crashes and more injuries, did Chrysler finish making the permanent design fix available through recall repairs.

1

Chrysler's reluctance in its motion to address the salient facts, and its focus instead on an assortment of allegations from the complaint, has had several consequences. First, Chrysler's motion focuses on a variety of points that Plaintiffs are not seeking to prove and which will have no ultimate bearing on the litigation. Chrysler devotes an entire section, for example, to vehicle problems (tire wear, pulling left, and steering "shimmy") that are *not* at issue. Chrysler also devotes a section to an "unconscionable conduct" claim, and refers throughout its brief to a "misrepresentation claim," even though Plaintiffs' consumer protection claims are based exclusively on Chrysler's unlawful omissions.

Understanding the full scope of the evidence also exposes flaws in Chrysler's legal arguments. For example, Chrysler challenges Plaintiffs' right to benefit of the bargain damages on the grounds that Chrysler eventually announced recalls. Chrysler fails to acknowledge, however, that the recall repairs came ███████████████████ ████████████████████ And even when Chrysler announced the recalls, the unavailability of parts led to a $105 million fine from the National Highway Traffic Safety Administration (NHTSA). The ████████████████████████████████ ███████████████████ justifies an award of benefit of the bargain damages. (*e.g.*, *In re General Motors Ignition Switch Litig.*, 2016 WL 3920353, at *8 (S.D.N.Y. July 15, 2016) (citing *In re Toyota Motor Corp. Unintended Acceleration Litig.*, 790 F. Supp. 2d 1152, 1165 (C.D. Cal. 2011) (despite recalls having been implemented, "because every lead Plaintiff alleges a safety defect, and defective cars are not worth as much as defect-free cars, Plaintiffs plausibly establish an economic loss.")).

Finally, Chrysler's statute of limitations argument fails too when the full evidentiary record is considered. Chrysler argues that the limitations period began for Mr. Johnson's omission claim as soon as his truck was recalled in March 2012. At that time, however, ████████████████████████████████████████████████████████ ███████████████████████ Consequently, Mr. Johnson was not on notice of the "wrongful act" necessary to start his limitations period. *LaGloria Oil & Gas Co. v. Carboline Co.*, 84 S.W.3d 228, 234-36 (Tex. App. 2001). It was not until 2013-2015 that

2

Chrysler re-recalled class vehicles, conceding the ineffectiveness of the earlier recalls, and the NHTSA began to investigate Chrysler's pattern of recall delays. Mr. Johnson's April 2014 suit was thus perfectly timely.

For these reasons, and those to be discussed, the Court should deny Chrysler's motion (with the several minor exceptions identified below).

## II.   STATEMENT OF FACTS

### The Defect in Class Vehicles

The Chrysler trucks at issue are the 2008-2012 model year RAM 2500, 3500, 4500, and 5500 trucks ("class vehicles").[1] SUF, No. 1.[2] ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[1] The models manufactured or sold before July 2009 are excluded from the proposed classes, however, because Chrysler did not exit bankruptcy until June 2009, and the parties stipulated to exclude them from this lawsuit.  ECF No. 16.

[2] The citation to "SUF" refers to Plaintiffs' Statement of Undisputed Facts in Opposition to Defendant's Motion for Partial Summary Judgment, which accompanies this memorandum.

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

---

[3] Citations to exhibits attached to the Declaration of David Stein in Opposition to Defendant's Partial Motion for Summary Judgment appear throughout as "Ex. _."

4

5

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

[REDACTED]

### **Plaintiffs Bright and Johnson Bought Class Vehicles in 2010.**

Both Mr. Bright and Mr. Johnson bought new class vehicles from Chrysler dealerships in 2010. Mr. Bright paid approximately $55,000 for a 2010 model year RAM 2500 truck in July 2010. SUF, Nos. 56-57. Mr. Johnson paid nearly $50,000 for his 2010 model year RAM 2500 truck on November 4, 2010. SUF, Nos. 58-59.

[REDACTED]

In December 2010, Chrysler finally contacted the NHTSA to disclose the steering defect and to announce that it would perform safety recall "K28." SUF, Nos. 60-61. [REDACTED]

[REDACTED]

7

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

9

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

### **Plaintiff Looper Bought His Class Vehicle in June 2013.**

Mr. Looper purchased his new class vehicle from a Chrysler dealership in June 2013, paying about $60,000 for a 2012 model year 3500 truck. SUF, Nos. 122-23.

██████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ Further delay ensued; not until April 2014, for some models, and May 2015, for the others, were parts ready. SUF, Nos. 131-34.

In response to another NHTSA inquiry in March 2015, Chrysler provided data revealing a portion of the ramifications of its conduct: Thousands of drivers had complained, with complaints recounting how drivers had lost control due to ball stud breaks. SUF, No. 135. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Chrysler admitted in

11

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

2014 and early 2015 alone, there had been "32 crashes" involving "property damage" and "20 injuries" potentially caused by the defect. SUF, No. 138.

**The Aftermath**

████████████████████████████████████████████████

███████████████████████ Chrysler's pattern of recall failures of which the NHTSA *was* aware were enough to lead the agency to fine Chrysler $105 million. SUF, No. 139. The NHTSA also required Chrysler to make a buyback option available to any owner whose class vehicle still had not had the anti-rotation device installed as of September 2015. SUF, No. 140. The buy-back offer is tied to the trucks' "trade-in value" (as opposed to the "private party value"), with a ten percent incentive to ensure removal of unrepaired trucks from the roads. SUF, Nos. 141-42.

While Chrysler has at long last been forced to either fix class vehicles or remove them from the road, it has yet to compensate the consumers it duped into buying defective vehicles. SUF, Nos. 143. By concealing its knowledge of the steering defect for so long, Chrysler was able to sell tens of thousands of defective Cross Car trucks at prices normally charged for non-defective trucks. Chrysler thus profited at the expense of its customers, who received dangerously defective trucks worth less than the non-defective vehicles they had bargained for. To assess the financial harm Chrysler caused consumers at the point of sale, Plaintiffs have retained three expert witnesses—Ted Stockton, Colin Weir, and Steven Gaskin—who will measure damages using two methodologies. The first methodology is based on the notion that—at a bare minimum—had Chrysler obeyed the law and disclosed the defect at the point of sale, the vehicles' market price would have been reduced by the cost of fixing the defect (so that the trucks would conform to the condition consumers expect of new vehicles). ECF No. 171-1 at ¶¶ 6-17 (Stockton Declaration). The second methodology is based on conjoint analysis, which uses a combination of economic theory, statistics, and survey data to estimate the decrease in market value that would have resulted had Chrysler disclosed the defect at the time and

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

point of sale. ECF No. 159 at ¶¶ 4-5, 14, 18, 57-60 (Gaskin Declaration); No. 171-2 at ¶ 14 (Weir Declaration).

## The Procedural History of Chrysler's Summary Judgment Motion

In November 2015, Chrysler sought permission to file multiple summary judgment motions. ECF No. 108. The Court denied Chrysler's request, explaining that "[f]iling four summary judgment motions … is not an appropriate method to gain a better understanding of the case; that is the purpose of discovery." ECF No. 111. The Court also rejected the request for extra pages since Chrysler had already "admitted … that all vehicles suffered from a uniform defect." *Id.*

Plaintiffs filed their class certification motion on August 8, 2016. ECF No. 155. Several weeks later, Chrysler said it intended to move for summary judgment, and the parties met and conferred on September 6, 2016. Stein Decl., ¶ 5. Plaintiffs told Chrysler that aspects of Chrysler's motion appeared intended to clarify the issues in this case, rather than to test Plaintiffs' evidence. *Id.* at ¶ 6, Ex. 83 at 595, 598. Plaintiffs suggested the parties consider amendment of the complaint, stipulation, or requests for admission, rather than motion practice on those issues. *Id.* at ¶ 7, Ex. 83 at 595, 598. Chrysler reacted by serving requests for admission on Saturday, September 10th, and demanded that Plaintiffs respond two days later (by Monday, September 12th at noon). *Id.* at Ex. 84 at 601-02. When Plaintiffs could not meet that deadline, *Id.* at 601, Chrysler filed its motion on Tuesday, September 13th.

## III.   ARGUMENT

### Mr. Johnson's Claim Is Not Barred by the Statute of Limitations.

Chrysler contends that the statute of limitations for Mr. Johnson's Texas Deceptive Trade Practices Act (DTPA) claim began to run in March 2012, when his truck was repaired under Chrysler's L16 recall. Chrysler's argument, however, mischaracterizes Mr. Johnson's claim. He advances no warranty claim, and is not merely alleging that his truck was defective when sold. Instead, his claim turns on Chrysler's *knowledge*, and its concealment of the defect, at the point of sale.

13

That distinction is key because under the DTPA, the statute of limitations does not begin upon mere notice of an injury. The consumer must discover (or, using reasonable diligence, should have discovered) the "false, misleading, or deceptive act or practice" that is at issue. Tex. Bus. & Com. Code Ann. § 17.565. In other words, the plaintiff must have had reason to know both of "the injury *and* that it was likely caused by the wrongful acts of another." *LaGloria Oil & Gas Co. v. Carboline Co.*, 84 S.W.3d 228, 234-36 (Tex. App. 2001) (emphasis added); *accord Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998) ("discovering the 'nature of the injury' requires knowledge of the wrongful act"); *Pecan Valley Nut Co. v. E.I. du Pont de Nemours & Co.*, 15 S.W.3d 244, 248 (Tex. App. 2000), *review granted, judgment vacated, & remanded by agreement* (Oct. 25, 2001). As Texas courts explain, the Texas legislature crafted the DTPA to have the limitations begin "when the *deceptive act or practice* … should have been discovered." *Cal Fed Mortgage Co. v. Street*, 824 S.W.2d 622, 625 (Tex. App. 1991) (emphasis added).

Mere knowledge of a recall does not put drivers on notice that they have been victimized by a "deceptive act or practice." There are hundreds of vehicle recalls every year.[4] And the federal regulatory scheme contains, as a central premise, the notion that manufacturers will *not* knowingly conceal safety defects when selling vehicles. 49 C.F.R. § 573.11(a). Rather, after the vehicles are already on the road, if the manufacturer discovers a safety defect, it must then initiate a recall and it must do so quickly. 49 C.F.R. § 573.6(a), (b), (c)(8)(ii) (the manufacturer must notify the NHTSA about the defect within "5 working days" and drivers within "two weeks"). Drivers who receive recall notices should thus only be expected to infer that the manufacturer recently discovered a defect and then acted swiftly to resolve it. A recall alone would not suggest that the manufacturer hid the defect at the point of sale.

Nor were the circumstances in 2012 so out of the ordinary that a recall in March 2012 should have alerted Mr. Johnson to the possibility that Chrysler had already known of the defect back in 2010, when he bought his truck. The recall notice stated little more

---

[4] *See* http://www.safercar.gov/Vehicle+Owners/vehicle-recalls-historic-recap.

14

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

than that Chrysler had discovered a safety defect and that drivers should present their trucks for repair. *See* Stein Decl., Ex. 79. Neither viewing that notice, nor experiencing a steering failure due to that defect, would alert a driver to Chrysler's long-running concealment of the defect. *See In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d 936, 961–62 (N.D. Cal. 2014) (applying Texas law and holding that "Plaintiffs' … fraud claims did not accrue until well after they first began to experience problems with their cars.… [E]ven after successive problems with the [vehicle], that does not in and of itself establish that Plaintiffs should therefore have known of Ford's alleged *fraud*.").

Even if Mr. Johnson had been suspicious, and decided to investigate, there was *no* public information suggesting he had an unlawful omission claim. Chrysler's report to the NHTSA claimed Chrysler had just recently discovered the defect and had fixed it within weeks. SUF, Nos. 82-84. None of the publicly available recall documents suggested that ████████████████████████████████████████████████ ████████████████████████████████████████ That is critical under Texas law, as Mr. Johnson was provided none of "the facts establishing the elements of the cause of action" under the DTPA. *See LaGloria Oil & Gas Co*., 84 S.W.3d at 236 (*quoting Willis v. Maverick*, 760 S.W.2d 642, 647 (Tex. 1988)). Instead, the first public hints of Chrysler's wrongdoing came later—from 2013-2015, when Chrysler re-recalled the trucks because the earlier recall efforts had been ineffective and the NHTSA began investigating and ultimately fined Chrysler for its dilatory recall practices. SUF, Nos. 107, 125, 127, 135, 139.

Mr. Johnson's retention of a "lemon law" lawyer in mid-2013 does not change the result. Mr. Johnson's truck has experienced a variety of problems, most of which have nothing to do with this case. Def.'s Compendium of Exs. [ECF 179-7], Ex. F at Bates No. 74-75. The headlights needed to be replaced, there was power steering noise, the truck's trim developed problems, and the check engine light activated. *Id.* Mr. Johnson thus retained an attorney, who sent Chrysler a run-of-the-mill lemon demand, asserting that "Chrysler failed to tender the Vehicle free of defects and its failure to repair the defective

Vehicle constitutes a breach of the written and implied warranties." *Id.* The letter references the DTPA, but only because under Texas law the DTPA can be violated by a simple breach of warranty. Tex. Bus. & Com. Code Ann. § 17.50(a)(2). The letter does *not* allege that Chrysler knew about the steering defect when Mr. Johnson bought his truck, and makes *no* allegations about omissions or concealment by Chrysler. ECF No. 179-7 at 74-75. Thus, even after receiving the full benefit of retained counsel, there was still not enough information for Mr. Johnson to suspect he had an unlawful omission claim under the DTPA. Only later, in the 2013-2015 timeframe, did Mr. Johnson suspect otherwise. By filing suit when he did, in April 2014, Mr. Johnson was thus within the two-year window required by the DTPA, ECF No. 1, and Chrysler is not entitled to summary judgment on statute of limitations grounds.

### Mr. Johnson Has Proof of Reliance on Chrysler's Omission.

### 1.  The Dealership's Contract Does Not Bar a Claim Against Chrysler.

Chrysler's argument—that Mr. Johnson cannot establish reliance because his contract with an independent Chrysler dealership contains "as is" language—ignores that the language defines the *dealership's* obligations, not Chrysler's:

> We are selling this Vehicle to you AS-IS and we expressly disclaim all warranties, express and implied, including any implied warranties of merchantability and fitness for a particular purpose…. All warranties, if any, by a manufacturer or supplier other than our Dealership are theirs, **not** ours, and only such manufacturer or supplier shall be liable for performance under such warranties. …

ECF No. 179-2 at 43 of 50. The clause, by its express terms, does not purport to protect Chrysler in any respect. Indeed, it emphasizes that it protects only the dealership: "All warranties, if any, by a manufacturer or supplier other than our Dealership are theirs, not ours." *Id*. And it states that Chrysler "shall be liable" for performing any warranties. *Id*. Thus, nothing in the purchase contract is "clear" that Mr. Johnson intended to release Chrysler of any liability.

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

Texas courts have refused to enforce "as is" clauses invoked by non-parties to the underlying contract—the very position Chrysler is in here. For example, in *Zbranek Custom Homes, Ltd. v. Allbaugh*, a defendant was "not a party to the lease" in question, yet sought to "escape liability by relying on an 'as is' clause in the lease." 2015 WL 9436630, at *5 (Tex. App. Dec. 23, 2015), *review denied* (Apr. 8, 2016). The Texas Court of Appeals rejected the defendant's argument, relying on the "general rule" that a non-party "may not enforce [a contract's] terms." *Id.* Another Texas appellate court reached the same decision. In *Haire v. Nathan Watson Co.*, defendants who had "not [been] parties to the sales contract" sought to invoke the agreement's "as is" provision. 221 S.W.3d 293, 300-01 (Tex. App. 2007). Reaching the same conclusion as in *Zbranek*, the *Haire* court held that the "'as is' provision of the contract was not an available defense" to non-parties to the contract. *Id.* Although the court acknowledged the plaintiffs were "bound by their agreement," there was no Texas authority "that supports the application of a contractual provision to noncontracting parties such that the [plaintiffs] would be precluded from suing" entities who had not been party to the agreement. *Id.* Because Chrysler was not a party to the contract at issue here, its argument based on the contract's "as is" provision can be rejected on the same grounds as in *Zbranek* and *Haire*.

Even if Chrysler were a party to the contract, Texas law does not enforce "as is" clauses within contracts formed because of a fraudulent omission. (*e.g.*, *Ritchey v. Pinnell*, 357 S.W.3d 410, 411–12 (Tex. App. 2012) ("an 'as is' clause is not binding on a purchaser if it is the product of a fraudulent representation or concealment of information by the seller") (citing *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161–62 (Tex. 1995)); *Dunbar Med. Sys. Inc. v. Gammex Inc.*, 216 F.3d 441, 450 (5th Cir. 2000) ("fraud used to induce agreement [is] a circumstance that render[s] that clause unenforceable"); *CAS, Ltd. v. TM Aviation Partners, LP*, 2016 WL 4151455, at *3 (Tex. App. Aug. 4, 2016) ("A buyer is not bound by an agreement to purchase something 'as is' that he is induced to make because of … concealment of information by the seller."); *Cmty. Mgmt., LLC v. Cutten Dev., L.P.*, 2016 WL 3554704, at *4 (Tex. App. June 28,

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

2016) (same). In fact, this "fraud in the inducement" ground for not enforcing "as is" provisions comes from the same *Prudential Insurance* case that Chrysler asks this Court to follow. *Ritchey*, 357 S.W.3d at 411–12.

As the discussion of facts in Section II reflects, ██████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████  Not until 2013-2015 did Chrysler announce and later implement recalls to fix the problem. And, as discussed in the section that follows, there is strong evidence that Mr. Johnson would not have entered into his purchase contract had Chrysler disclosed the safety defect. Chrysler's fraudulent inducement of Mr. Johnson to buy his truck, and thus to enter into the dealership contract, is a second reason that Chrysler is barred from enforcing the "as is" provision of the agreement.

Finally, the "as is" provision is also unenforceable in light of the totality of the circumstances surrounding its entry. As a number of Texas cases reflect, "an as-is clause may not be controlling if it appears in a standard form contract that cannot be negotiated nor serve as the basis of the parties' bargain, particularly if the parties are not equally sophisticated." *Bishop v. Creditplex Auto Sales LLC*, 2016 WL 3453633, at *3 (Tex. App. June 23, 2016). The dealership agreement here is pure boilerplate, there is no evidence of negotiations between the parties, and the parties were not represented by counsel in a sophisticated business attempt to settle an ongoing dispute. Johnson Dep., Def.'s Compendium of Exs. [ECF No. 179-1], Exhibit A at 74:22-75:8 (hereinafter "Johnson Dep."). Instead, this was a typical purchase transaction between a professional dealership and an ordinary consumer. On these facts, the "as is" clause cannot be construed to have vitiated Mr. Johnson's reliance. *See, e.g.*, *Garza v. CTX Mortg. Co., LLC*, 285 S.W.3d 919, 927 (Tex. App. 2009) (reversing summary judgment because defendant failed to provide any evidence on, or analysis of, the surrounding circumstances); *John v. Marshall*

18

*Health Servs., Inc.,* 91 S.W.3d 449-50 (Tex. App. 2002) (party was not represented by counsel and the contract was at the beginning rather than the end of the parties' relationship); *Woodlands Land Dev. Co., L.P. v. Jenkins,* 48 S.W.3d 415, 422 (Tex. App. 2001) (emphasizing lack of sophistication); *Fletcher v. Edwards,* 26 S.W.3d 66, 77 (Tex. App. 2000) (emphasizing lack of representation of counsel and lack of sophistication in business).

### 2.  <u>There Is Substantial Evidence of Reliance on Chrysler's Omission.</u>

Chrysler also argues that Mr. Johnson cannot prove he relied on Chrysler's non-disclosure of the steering defect. In advancing that argument, however, Chrysler does not deny that ███████████████████████████████████████████████ ███████████████████████ Chrysler also does not dispute that it would have been perfectly reasonable for Mr. Johnson to forego buying the truck had Chrysler admitted the danger. After all, the danger was serious enough to warrant scrutiny on multiple occasions from federal regulators. *See, e.g.*, SUF, Nos. 88, 104. And Chrysler itself has repeatedly acknowledged that the defect warranted a "safety recall," since it could "cause a loss of directional control and/or a crash without warning." SUF, Nos. 69-70. That danger is not hypothetical; it has been borne out on roadways across the country. As Chrysler acknowledges, in the years after it discovered the defect, the defect caused a number of crashes and injured drivers. SUF, Nos. 77, 138.

Instead of acknowledging the full context of Mr. Johnson's purchase, Chrysler contends that Mr. "Johnson was going to purchase the truck regardless of what information was or was not disclosed"—an assertion Chrysler bases entirely on the fact that Mr. Johnson initiated his purchase by telephone and does not remember, five years later, every specific thing he looked at beforehand. Mot. at 15. Mr. Johnson's testimony in this case helps explain why Chrysler's argument fails; Mr. Johnson's run-of-the-mill purchase involved diligence on his part (he researched the truck both online and at the dealership) as well as the unsurprising fact that Mr. Johnson values the safety of himself and his family. Johnson Dep. 70:20-71:16, 75:2-11, 117:18-22. Mr. Johnson testified that

19

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

he comparison-shopped class vehicles against other trucks, using information from the "[i]nternet, the [Chrysler dealership] salesman, and … when I went and looked" in person at the Chrysler dealership to inform his decision. *Id.* He testified that while he could not recall everything he reviewed, "I'm sure that I've seen material" about the safety of the trucks, and that he had "looked it up on my phone." *Id.* And while the purchase has "been a long time ago" now, *id.*, Mr. Johnson also remembers telling Chrysler dealership personnel that the truck's safety was important to him because, "I want a safe vehicle for my family and [me] to drive, period," and that the Chrysler dealership personnel responded by assuring Mr. Johnson about the truck and "how safe it was." *Id.*

These facts and circumstances show that Mr. Johnson "would not have entered into the transaction had the [safety defect] been disclosed"—which is all Texas law requires. *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. 2006) (citing *Gill v. Boyd Distrib. Ctr.*, 64 S.W.3d 601, 604 (Tex. App. 2001)). As Mr. Johnson testified, when asked about his complaint:

> I mean, here's the thing, and I'm probably going to speak a little bit different.
>
> But ***they sold me a vehicle without telling me that there was anything wrong*** with it, and not advertising that there was anything wrong with it….

Johnson Dep. 16:24-17:3, (emphasis added). Mr. Johnson went on, "I bought the truck because of the simple fact of safety. I want my family safe." *Id.* at 71:9-11. Chrysler's suggestion that Mr. Johnson would nevertheless have bought the truck even if Chrysler had revealed the safety defect is neither plausible nor consistent with the evidence. Chrysler's argument should be rejected.

### Mr. Johnson May Recover Benefit of the Bargain Damages.

By hiding the steering defect, Chrysler was able to sell tens of thousands of defective class vehicles at prices normally charged for non-defective trucks. Through this suit, Plaintiffs seek to force Chrysler to reimburse consumers for the difference in value between the non-defective trucks promised and the dangerously defective trucks Chrysler actually sold and leased. Providing this reimbursement would both compensate consumers

20

for their losses and deter Chrysler from concealing other safety defects in the future. Like California law, the Texas DTPA allows plaintiffs to recover based on the difference between the value of the good promised and the value of the good received. *See Mercedes-Benz of N. Am., Inc. v. Dickenson*, 720 S.W.2d 844, 848 (Tex. App. 1986). These damages are often referred to as "benefit of the bargain" damages, and Plaintiffs propose two methods for calculating them, both of which are supported by expert declarations. *See generally* ECF Nos. 159, 171-1, 171-2.)

In its motion, Chrysler argues that under Texas law, benefit of the bargain damages are unavailable whenever a defendant belatedly provides what it originally promised. Mot. at 19. But Chrysler locates no authority for such a per se rule. Chrysler instead cites two Texas cases in which the courts expressly tied their holdings to the cases' unique facts. In the first case, the court found an insurer substantially complied with its contract even though it failed to provide certain documents in a timely fashion. *Cox Operating, LLC v. St. Paul Surplus Lines Ins.*, 2012 WL 290027, at *6 (S.D. Tex. 2012). The court noted that, under the facts presented, there had been no ramifications from the delay; it never suggested that delayed performance is *always* immaterial as a matter of law. *Compare id.*, *with Guido v. L'Oreal, USA*, 2013 WL 454861 at *6 (C.D. Cal. Feb. 6, 2013) ("Courts have found as a matter of course that nondisclosures about safety considerations of consumer products are material.") (citing *In re Toyota Motor Corp. Unintended Acceleration Litig.*, 754 F. Supp. 2d 1145, 1173 (C.D. Cal. 2010)). And Chrysler's second case makes clear no such broad proposition exists: The defendant, accused of violating the False Claims Act, skipped corrosion testing before selling vehicles to the government. The court held the lack of testing was immaterial, but only because there was no more than a theoretical possibility that rust might one day develop and—even then—the rust would *not* endanger drivers. *U.S. ex rel. Stebner v. Stewart & Stevenson Servs.*, 305 F. Supp. 2d 694, 701 (S.D. Tex. 2004). Here, on the other hand, the unrebutted evidence shows the defect warranted safety recalls and caused crashes and injuries.

1     Chrysler also relies on two California cases, though it does not seek summary

2     judgment on Plaintiffs' California claims. The California cases—like the Texas cases

3     Chrysler cited—do not deal with the Texas DTPA. And in neither case had the defendants

4     knowingly sold a dangerous product and then spent years concealing the defect before

5     issuing belated recalls. *Cf. In re Toyota Motor Corp. Hybrid Brake Mktg. Litig.*, 915 F.

6     Supp. 2d 1151 (C.D. Cal. 2013); *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472 (S.D.

7     Cal. 2013).

8     To the extent Chrysler cites these non-Texas cases to suggest a national consensus

9     supporting its position, the caselaw tells a different story. Benefit of the bargain damages

10    are often the *chief* remedy in a case like this—where a manufacturer profited by concealing

11    a known danger and then only belatedly issued recalls. The court overseeing the *General

12    Motors Ignition Switch* multi-district litigation, for example, recently issued a 103-page

13    opinion sanctioning benefit of the bargain damages. *In re Gen. Motors*, 2016 WL

14    3920353, at *1, 10 (S.D.N.Y. July 15, 2016) ("The benefit-of-the-bargain defect theory

15    compensates a plaintiff for the fact that he or she overpaid, at the time of sale, for a

16    defective vehicle. That form of injury has been recognized by many jurisdictions."). The

17    court went on to hold many plaintiffs had "cognizable" claims for "benefit-of-the-bargain

18    damages even for cars that have been fully repaired." *Id.* at *40. The *GM* decision relied

19    on another similar case: Judge Selna's ruling in the *Toyota Unintended Acceleration*

20    litigation. *Id.* at *8 ("'because every lead Plaintiff alleges a safety defect, and defective

21    cars are not worth as much as defect-free cars, Plaintiffs plausibly establish an economic

22    loss.' In other words … plaintiffs … have a claim under a benefit-of-the-bargain defect

23    theory.") (quoting *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1165 (C.D. Cal.

24    2011)).

25    Those rulings are consistent with Ninth Circuit case law. In *Edwards v. Ford Motor

26    Co.*, Ford argued that after it had already notified drivers about a defect and offered free

27    repairs, there was no remaining meaningful relief that the litigation could provide. 603

28    Fed. App'x 538, 539-40 (9th Cir. 2015). The Ninth Circuit disagreed, based on the fact

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

that plaintiff also intended to seek "reimbursement of the money consumers spent on the [vehicles]." *Id.* at 540. A similar result has been reached by at least one Texas court. *Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963, 972 (E.D. Tex. 2015) (holding that a Chrysler recall did not moot claims for diminished value); *cf. In re Gen. Motors*, 2016 WL 3920353, at *22 (noting the interchangeability of "benefit of the bargain" with "diminution in value"); *see also Philips v. Ford Motor Co.*, 2016 WL 693283, at *7-10 (N.D. Cal. 2016) (holding that damages based on the diminished value of the vehicles remained viable post-recall) (quoting *Sater v. Chrysler Group LLC*, 2014 WL 11412674, at *4 (C.D. Cal. 2014) ("holding [defendant] accountable for the other alleged injuries affords relief the recall does not provide")). Because benefit of the bargain damages are appropriate under the facts of this case, and supported by the case law, Chrysler's motion should be denied.

### The Issues Raised in Chrysler's Motion That Are Not in Dispute.

Finally, as discussed above, Chrysler's motion raises issues that are not germane to Plaintiffs' liability theory and which are mostly not disputed.

### 1. Plaintiffs Do Not Contest That Repairs Were Ultimately Provided.

First, Chrysler claims an "integral" premise of Plaintiffs' case is that Chrysler still has not provided effective recall repairs. Mot. at 20. Plaintiffs do not contest, however, that in 2014 and 2015 Chrysler finally made its design fix available for class vehicles, and that those parts can eliminate the defect.

That acknowledgement does not have any of the ramifications Chrysler suggests, however. Chrysler implies that the eventual recall repairs means Plaintiffs cannot recover damages based on diminished resale values. Mot. at 3. Plaintiffs' damages theories are focused on the diminished value of class vehicles at the point of sale, however, not at resale. ECF No. 153-2 at 22 (Plaintiffs' "expert testimony focuses on the overpayment by proposed class members at the point they bought and leased Class Vehicles without being told of the safety defect."); *see also* TAC, ECF No. 101 at ¶ 122 ("Plaintiffs and Class members purchased Vehicles they otherwise would not have purchased at prices they would have otherwise not paid"). Chrysler also suggests the availability of recall repairs

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

means that Plaintiffs lack "evidence of a defect." Mot. at 20. As Section II above demonstrates, Plaintiffs have ample evidence of a defect that causes left ball stud fractures —a point Chrysler never seeks to contradict. And to the extent Chrysler is asking the Court to find that it made effective recall repairs available *before* this suit began, Mot. at 4, that is simply not true. When Plaintiffs filed suit in early April 2014, Chrysler had *announced* the recalls, but had still not installed a single anti-rotation device in a class vehicle. SUF, No. 131. After the suit was filed, Chrysler began making "limited quantities" of parts available, though the parts shortage often caused drivers seeking repairs to be turned away. SUF, Nos. 132-133. In the end, it was not until May 2015, some seven years after Chrysler discovered the defect, that the design fix became available for all class vehicles. SUF, No. 134.[5]

### 2. Mr. Johnson Is Not Pursuing an "Unconscionable Conduct" Claim.

While the DTPA can be violated in various ways, including by "unconscionable" conduct or misrepresentations, Mr. Johnson has made clear he is not prosecuting his DTPA claim under any such theory. *See* Plaintiffs' Mot. for Class Cert., ECF No. 153-2 at 18 (the DTPA liability theory is based on Chrysler's omission of a material fact). Plaintiffs do not object to dismissal of the unconscionability portion of the DTPA claim.

### 3. Mr. Johnson Is Not Pursuing Claims Related to Shimmy, Tire Wear, or His Truck Pulling to the Left.

Finally, despite the broad heading, "Johnson has no Evidence to Support Causation," Mot. at 17, Chrysler never challenges Plaintiffs' evidence establishing that the steering defect described in Section II causes left ball studs to break and steering to fail. Instead, Chrysler argues that Mr. Johnson has no evidence that a defect *also* causes

---

[5] Although not of major consequence, Chrysler is also wrong when it claims the recall parts "were tested prior to being released for use and no defects were found." (Mot. at 4.) Chrysler itself told the NHTSA the opposite: after the NHTSA asked about the "quality concern with the remedy parts in the safety recalls," Chrysler admitted that recall repairs had been delayed for months while quality issues were resolved. SUF, No. 144.

his truck to pull left, experience tire wear, and experience steering "shimmy." *Id.* Again, Chrysler is not quite right on the facts: ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

But as Plaintiffs made clear in their motion for class certification, and as Plaintiffs told Chrysler during their meet and confer call, Plaintiffs are *not* pursuing a case relating to steering shimmy or any of the other problems identified in this section of Chrysler's brief. Stein Decl., ¶¶ 6-7. Summary judgment on this point is therefore neither necessary nor appropriate.

## IV.   <u>CONCLUSION</u>

For the above reasons, Plaintiffs ask that the Court deny Chrysler's Motion for Summary Judgment in its entirety, except as discussed above.

DATED: October 3, 2016                  Respectfully submitted,

**GIBBS LAW GROUP LLP**

By:   *<u>/s/ David Stein</u>*

Eric H. Gibbs
Dylan Hughes
David Stein
505 14th Street, Suite 1110
Oakland, California 94612
Telephone:  (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com
ds@classlawgroup.com

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

Stuart A. Davidson
Mark Dearman
Elizabeth A. Shonson
Janine D. Arno
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
eshonson@rgrdlaw.com
jarno@rgrdlaw.com
**ROBBINS GELLER RUDMAN & DOWD
LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: 561/750-3000
561/750-3364 (fax)

*Proposed Class Counsel*

Steven L. Marchbanks (SBN 214686)
**PREMIER LEGAL CENTER, A.P.C.**
501 West Broadway, Suite 1095
San Diego, CA 92101
Telephone: 619/235-3200
Fax: 619/235-3300
steve@premierlegalcenter.com

Robert G. Loewy (SBN 179868)
**LAW OFFICES OF ROBERT G. LOEWY,
P.C.**
101 Enterprise, Suite 350
Aliso Viejo, CA 92656
Telephone: 949/442-7103
Fax: 949/242-5105
rloewy@rloewy.com

Gregory F. Coleman (*pro hac vice*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37902

26

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB

Telephone: 865/247-0080
greg@gregcolemanlaw.com

*Attorneys for Plaintiffs*

MEMORANDUM OF P & A OPPOSING SUMMARY JUDGMENT
CASE NO. 5:14-CV-00700-VAP-DTB