United States District Court
Central District of California

| | |
|---|---|
| Jeff Looper et al., <br><br>　　　　　　　　Plaintiffs, <br><br>　　　v. <br><br>FCA US LLC, f/k/a Chrysler Group LLC, et al. <br><br>　　　　　　　　Defendants. | LACV 14-00700-VAP (DTBx) <br><br> **Order Granting Motion for Preliminary Approval of Class Action Settlement [Doc. No. 217]** |

　　　On February 6, 2017, Plaintiffs Michael Bright and Jeff Looper ("Plaintiffs") filed a Motion for Preliminary Approval of Class Action Settlement.  (Doc. No. 217.)  On March 16, 2017, Defendant FCA US LLC, f/k/a Chrysler Group LLC, filed a Response to Plaintiffs' Motion.  (Doc. No. 219.)  Having considered the papers filed in support of the Motion, the Court GRANTS the Motion.

## I. BACKGROUND
### A.　Factual and Procedural History

　　　This case concerns a steering linkage defect in Defendant FCA US LLC, f/k/a Chrysler Group LLC's 2009-12 Dodge Ram trucks.  (Doc. No. 217-1 at 7.)  Specifically, the left tie rod ball stud in Defendant's vehicles' steering linkage systems was prone to fracture, resulting in a sudden loss of steering control.  (Id.)  The Parties do not dispute that, in November 2013, Defendant issued recalls that effectively remedied the design defect in question and agree that effective repairs were provided to all named plaintiffs. (Doc. No. 202 at 7.)

　　　In April 2014, Plaintiffs Bright and Looper, together with Texas Plaintiff Scott Johnson, filed a complaint against Defendant alleging a variety

1

of claims on behalf of a class of persons who owned or leased various 2009-12 Dodge Ram trucks. (Doc. No. 101.) Specifically, Plaintiffs Bright and Looper alleged claims under federal and California law for: violation of the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (Count I); violation of the California Song-Beverly Warranty Act, Cal. Civ. Code section 1791, et seq. (Count II); violation of the California Consumer Legal Remedies Act, Cal. Civ. Code section 1750, et seq. (Count III); violation of California Unfair Competition Law, Cal. Bus. & Prof. Code section 17200, et seq. (Count IV); negligent failure to warn (Count VI); negligent failure to test (Count VII); and negligent misrepresentation (Count VIII). Texas Plaintiff Johnson alleged a single claim under the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code section 17.46, et seq. (Id.)

The Parties litigated the case for well over two years. Defendant twice moved to dismiss Plaintiffs' claims (Doc. Nos. 27, 65), deposed Plaintiffs' experts (Doc. No. 217-1 at 7), and took extensive written discovery of the named plaintiffs (id.). Plaintiffs, for their part, obtained and reviewed more than 80,000 documents concerning the alleged defect, deposed Defendant's representative, supplier, and experts, and worked with their own experts to prepare for trial. (Doc. No. 218 at 2.) On October 25, 2016, the Court granted Defendant's Motion for Partial Summary Judgment as to all claims of Texas Plaintiff Scott Johnson. (Doc. No. 202.)

**B.** **Settlement Class**

The proposed class is defined as:

> All individuals who purchased a new Class Vehicle in California between July 1, 2009, and November 6, 2013, and who were not eligible for the Repurchase Program remedies provided under Paragraph 35 of the Consent Order entered into between FCA US LLC and the National Highway Traffic Safety Administration on July 24, 2015.

(Doc. No. 217-2 at 4.)

"Class Vehicle" refers to the following 2009-12 Dodge Ram trucks: 2500 4x4 manufactured between July 1, 2009, through January 21, 2012; 3500 4x4 manufactured between July 1, 2009, through December 22, 2012; 3500 Cab Chassis 4x2 and 4x4 manufactured between July 1, 2009, through December 22, 2012; 4500 manufactured between July 1, 2009, through December 22, 2012; and 5500 manufactured between July 1, 2009, through December 22, 2012. (Id.)

The proposed class does not include purchasers of used trucks or lessees (who will not be releasing any claims) and vehicle owners who were already offered benefits under Chrysler's Repurchase Program. (Doc. No. 217-1 at 11.)

## C. Settlement Compensation

Under the proposed settlement, Defendant will pay $250 to each class member who purchased a 4500/5500 Class Vehicle in California and $195 to each class member who purchased a 2500/3500 Class Vehicle in California. (Doc. No. 217-2 at 7.) Defendant shall mail each class member a check in the amounts above, and there will be no need for class members to submit a claim. (Id.) All checks will be sent within 30 days of the final settlement approval and will remain valid for 60 days from issuance.[1] (Id. at 4, 7.) Defendant will retain the funds from all checks that are not validly presented for payment. (Id.)

In addition to mailing class members the checks, Defendant will also provide them with an extended warranty. (Id. at 7-8.) Defendant's Basic Limited Warranty is a three-year/36,000-mile warranty. (Doc. No. 217-1 at 12.) Under the settlement, Defendant's Basic Limited Warranty will be extended to cover steering-linkage parts installed pursuant to the recall repairs

---

[1] The Court is unlikely to approve such a short period for check validity at the final settlement approval.

as well as the labor undertaken to install them until January 1, 2018, regardless of the vehicle's age or mileage.  (Doc. No. 217-2 at 8.)

Finally, Defendant has agreed to pay a total of $1,800,000 for attorneys' fees, costs, and class representative service awards.  (Id. at 15.)  From that payment, the two remaining class representatives will receive $5,000 each for their services.  (Id.)

### D.   Release

In exchange for the compensation Defendant will provide pursuant to the settlement, participating class members will release all claims asserted in the Third Amended Complaint, as well as all claims that could have been brought based on the facts alleged in the Third Amended Complaint.  (Id. at 13-14.)  That release does not affect the rights of persons who timely and properly request exclusion from the class and will not affect any claims that arise out of a consumer's purchase of a used Class Vehicle, lease of a Class Vehicle, purchase of a Class Vehicle outside of California, or purchase of any Class Vehicle that was eligible for the Repurchase Program.  (Id. at 14.)  Moreover, the settlement agreement does not release claims for personal injury or property damage.  (Id.)

## II.   LEGAL STANDARD

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  When parties reach a settlement before class certification, courts must assess: (1) the propriety of the class certification and (2) the fairness of the settlement.  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  When reviewing the settlement, the Court should not endeavor to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  City of Seattle, 955 F.2d at 1291.

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1996). A court considering such a request should give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." Id.

In addition to these requirements, a plaintiff must satisfy one of the three Rule 23(b) prongs to maintain a class action. Here, Plaintiffs seek class certification under Rule 23(b)(3). (Doc. No. 56 at 18.) Where a plaintiff seeks class certification under Rule 23(b)(3), he or she must prove: "[1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Class action settlements must also satisfy the fairness and reasonableness standard of Rule 23(e). Alberto v. GMRI, Inc., 252 F.R.D. 652, 664 (E.D. Cal. 2008). Rule 23(e) states: "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Id. The Court must hold a hearing and find that the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval followed by a final fairness hearing. See Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004).

At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether or not notice should be sent to class members. Vasquez v. Coast Valley Roofing, Inc., 670 F. Supp. 2d 1125 (E.D. Cal. 2009); In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); Gautreaux v. Pierce, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (stating the purpose of a preliminary approval hearing is to "ascertain whether there is any reason to notify the class

5

members of the proposed settlement and to proceed with a fairness hearing"); Federal Judicial Center, Manual for Complex Litigation, § 21.632.

### III. DISCUSSION
#### A. Class Certification

As noted above, Class Counsel seeks to certify the settlement class consisting of:

> All individuals who purchased a new Class Vehicle in California between July 1, 2009, and November 6, 2013, and who were not eligible for the Repurchase Program remedies provided under Paragraph 35 of the Consent Order entered into between FCA US LLC and the National Highway Traffic Safety Administration on July 24, 2015.

(Doc. No. 217-2 at 4.)

Under Rule 23, "[a] class definition should be precise, objective and presently ascertainable," such that it is "administratively feasible to determine whether a particular person is a class member." Allen v. Hyland's Inc., 300 F.R.D. 643, 658 (C.D. Cal. 2014) (citations omitted) (internal quotation marks omitted). "The identity of class members need not, however, be known at the time of class certification." Id.

Here, Plaintiffs have "precisely defined the class based on objective criteria." See Allen, 300 F.R.D. at 658. Specifically, class members are all purchasers of a new Class Vehicle in California between July 1, 2009, and November 6, 2013, and who were not eligible for the "Repurchase Program" remedies provided under Paragraph 35 of the Consent Order entered into between Defendant and the National Highway Traffic Safety Administration on July 24, 2015. (Doc. No. 217-2 at 4.) It is "administratively feasible for the Court to determine whether a particular individual or entity is a member of the class . . . . Evidence such as [purchase history] could be used to identify class membership. Moreover, Defendants do not argue that the

proposed class is unascertainable." See City of Huntington Park v. Landscape Structures, No. EDCV 14-00419-VAP (DTBx), 2015 WL 3948411, at *4 (C.D. Cal. 2015). Accordingly, the class is ascertainable.

### 1. Rule 23(a) Requirements
#### i. Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). "Although there is no exact number," courts have repeatedly held classes comprised of "more than forty" members presumptively satisfy the numerosity requirement. See e.g., DuFour v. BE LLC, 291 F.R.D. 413, 417 (N.D. Cal. 2013) (citing Krzesniak v. Cendant Corp., No. 05-05156 MEJ, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007). "Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." Heffelfinger v. Elec. Data Sys. Corp., No. CV 07-00101 MMM (Ex), 2008 WL 8128621, at *13 (C.D. Cal. Jan. 7, 2008) (citations omitted) (internal quotation marks omitted).

Here, Class Counsel has represented that the class consists of the original purchasers of approximately 7,100 Class Vehicles. (Doc. No. 217-1 at 13.) As the class is comprised of "more than forty" members, Plaintiffs have met their burden as to numerosity. See DuFour, 291 F.R.D. at 417.

#### ii. Commonality

Commonality "requir[es] a plaintiff to show that 'there are questions of law or fact common to the class.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) (quoting Fed. R. Civ. P. 23(a)(2)). Even a single common question will suffice. See id. at 359.

Here, Plaintiffs raise common questions that resolve the dispute, namely: "whether the Dodge Ram's steering linkage was defective as sold;

7

(ii) whether FCA US knew of the steering linkage defect; and (iii) whether the defect poses an unreasonable safety risk[?]" (Doc. No. 217-1 at 14.)  As those questions are capable of class-wide resolution, commonality is satisfied.  See Wal-Mart Stores, Inc., 564 U.S. at 359.

### iii. Typicality

The Ninth Circuit in Hanlon v. Chrysler Corp. explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  150 F.3d 1011, 1020 (9th Cir. 1998).  Thus, to find typicality, a "court does not need to find that the claims of the purported class representatives are identical to the claims of the other class members."  Haley v. Medtronic, Inc., 169 F.R.D. 643, 649 (C.D. Cal. 1996).

Here, Plaintiffs Bright and Looper's claims are typical of all class members' claims because the claims arise out of the same factual and legal circumstances: like all class members, Plaintiffs Bright and Looper were sold a vehicle with an undisclosed steering linkage defect and did not receive an appropriate repair until the vehicle was several years old.  (Doc. No. 217-1 at 14.)  Hence, typicality is satisfied.

### iv. Adequacy of Representation

Finally, "[t]he named Plaintiffs must fairly and adequately protect the interests of the class."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(4)).  To determine whether this requirement has been met, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Id.  In determining adequacy of counsel pursuant to Rule 23(g), the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of

8

claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Here, there is no indication that Plaintiffs or Class Counsel have any conflicts of interest. (Doc. No. 217-1 at 14.) As noted above, Class Counsel has identified, investigated, and prosecuted the claims vigorously for more than two years. For example, Class Counsel has reviewed more than 80,000 documents produced by Defendant; deposed Defendant's representative, supplier, and its experts; and engaged in extensive motion practice concerning the pleadings, class certification, and damages. (Doc. No. 218 at 2.)

Accordingly, both Plaintiffs and Class Counsel have demonstrated their "ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). As Plaintiffs have met all of the Rule 23(a) criteria, the Court turns to the Rule 23(b) requirements.

### 2. Rule 23(b)(3)

Plaintiffs seek preliminary class certification under Rule 23(b)(3). (Doc. No. 217-1 at 15.) When invoking Rule 23(b)(3), the party seeking class certification bears the burden of showing the following two criteria are met: (1) the questions of law or fact common to members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. See In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009).

#### i. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150

F.3d at 1022. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." Id. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Id.

As discussed above, Plaintiffs have demonstrated commonality amongst proposed class members. No individualized questions predominate, and the factual and legal issues in this case are the same for every class member—that is, "whether [class members'] trucks were sold with defective steering linkages, whether Chrysler knew about the defect, and whether the defect would be considered material by a reasonable consumer." (Doc. No. 217-1 at 15.) Plaintiffs, therefore, have demonstrated that common issues predominate over individualized concerns.

    ii. **Superiority**

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification. (Id.)

A class action appears to be superior to other available methods for adjudicating this matter fairly and efficiently. Here, the alternative to a single class action would be numerous high-risk, low-reward individual actions. "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this superiority factor weighs in favor of class certification." Wolin, 617 F.3d at 1175 (alteration brackets omitted). Indeed, without class certification, it is unlikely that these claims would be litigated at all. Hence, Plaintiffs have satisfied the superiority requirement of Rule 23(b)(3).

Since Plaintiffs have satisfied Rule 23(a) and Rule 23(b), the Court concludes that class certification is proper in this case, and now turns to whether the proposed settlement is fair, adequate, and reasonable under Rule 23(e).

**B.    Fairness, Adequacy, and Reasonableness of the Settlement**

"[Rule] 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026. In determining whether the settlement is fair, adequate, and reasonable, courts balance several factors, including: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." Id. In addition, the Court must find that the settlement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." Hanlon, 150 F.3d at 1027.

The court need not consider all of these factors; rather, it must only consider those factors that are designed to protect absentees. Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003) overruled on other grounds by Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010). Moreover, as some of these factors cannot fully be assessed until the Court conducts the fairness hearing associated with the final approval of the settlement, "a full fairness analysis is unnecessary at this stage . . . ." Alberto, 252 F.R.D. at 665 (quoting W. v. Circle K Stores, Inc., No. CIV. S-04-0438 WBS (GGH), 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2006)). "[W]hen (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012).

11

### 1. Strength of Plaintiff's Case and Future Risk[2]

Plaintiffs may have a strong case for liability. As discussed in this Court's order on Defendant's Motion for Partial Summary Judgment, Plaintiffs have evidence to show that (i) the class vehicles were sold with defective steering linkages, and (ii) Defendant may have known about the defect and sold the vehicles anyway. (See generally Doc. No. 202.) Plaintiffs contend that evidence also establishes that the defect posed an unreasonable safety risk. (Doc. No. 217-1 at 17.)

Damages, however, are more uncertain. As noted above, the Parties do not dispute that, in November 2013, Defendant issued recalls that effectively remedied the design defect in question. (Doc. No. 202 at 7.) Those recalls were provided to Plaintiffs. (Id.) In its partial summary judgment order, the Court rejected Texas Plaintiff Johnson's benefit-of-the-bargain damages theory because those recalls left Plaintiffs "in essential the same position [they] would have been in had Defendant sold [them] a non-defective truck." (Id. at 14.) Although the Court's rejection of Texas Plaintiff Johnson's damages theory was limited to his Texas DTPA claim, the Court relied in part on two federal district court cases interpreting California law to reach its decision. (Id. at 14-15 (citing In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig., 288 F.R.D. 445, 449-50 (C.D. Cal. 2013); Waller v. Hewlett-Packard Co., 295 F.R.D. 472, 487-88 (S.D. Cal. 2013)).) Under those circumstances, Plaintiffs' similar claims under California law could be viewed as weak. At the very least, Plaintiffs would have assumed the "substantial risk of incurring the expense of a trial without any recovery." In re Toys 'R' Us FACTA Litig., 295 F.R.D. at 451.

Moreover, before the filing of the present Motion, the Court had not yet certified a class in this case. Where there is a risk that class certification

---

[2] As the first three Hanlon factors—strength of the Plaintiff's case; the risk, expense, complexity, and likely duration of future litigation; and the risk of maintaining class action status throughout the trial—are interrelated, the Court discusses them together here.

might not be maintained before entry of final judgment, this factor favors approving the proposed settlement. See, e.g., Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009). Given the relative strength of Plaintiffs' claims and the risks and costs associated with future complex litigation, the settlement agreement's terms appear to be reasonable. Hence, these factors favor preliminary approval.

### 2. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney v. Cellullar Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998). As noted above, the Parties litigated diligently for more than two years, including engaging in extensive discovery and motion practice. (Doc. No. 218 at 2.) Accordingly, the Court finds this factor weighs in favor of preliminary approval. See Linney, 151 F.3d at 1239.

### 3. Experience and Views of Counsel

Class Counsel has ample experience litigating class actions similar to this case and has demonstrated the ability to prosecute vigorously on behalf of the class members. (Doc. No. 218 at 2.) Class Counsel believes the settlement is "an excellent result for the class and recommend[s] its approval." (Id.) Accordingly, the Court finds this factor weighs in favor of preliminary approval.

### 4. Presence of a Governmental Participant and Reaction of the Class Members to the Proposed Settlement

As there is no governmental participant in this action and the Parties have not yet provided notice to the class members, these factors are irrelevant for the purposes of preliminary approval.

### 5. The Amount Offered in the Settlement

Defendant must pay $250 to each class member who purchased a 4500/5500 Class Vehicle in California and $195 to each class member who

13

purchased a 2500/3500 Class Vehicle in California. (Doc. No. 217-2 at 7.) Plaintiffs' expert, Edward M. Stockton, estimated the point-of-sale harm suffered by class members to be $315 for each 4500/5500 Class Vehicle and $246 for each 2500/3500 Class Vehicle. (Doc. Nos. 154-18 at 10, 171-1 at 9.) Stockton acknowledged the possibility that those amounts would need to be discounted to account for the fact that Defendant did eventually provide class members with safe and fully-functional vehicles. For example, Stockton estimated damages to be $173.25 for an owner of a 2011 Dodge Ram 5500 who had driven 60,000 miles by the time Defendant offered an effective repair. (Doc. Nos. 154-18 at 11-12, 171-1 at 10-11.)

Considering the present value of the settlement amount, the probability of lengthy litigation in the absence of a settlement, the risk that Plaintiff and the Class members would not have been able to succeed at trial, and the risk that a jury could award damages less than the awards offered by Defendant, the Court finds the settlement payments to participating class members are within the range of reasonableness to warrant preliminary approval.

In addition to the payments to participating class members, Defendant has agreed to pay a total of $1,800,000 for attorneys' fees, costs, and class representative service awards. (Id. at 15.) From that payment, the two remaining class representatives will receive $5,000 each for their services. (Id.)

### i. Attorneys' Fees & Costs

Class Counsel contends that they have advanced hundreds of thousands of dollars in litigation costs on behalf of Plaintiffs and proposed class members. (Doc. No. 218 at 3.) They also state that the attorney fee award agreed upon by the Parties will result in an amount that is "significantly less" than if their fees were calculated using the lodestar method. (Id.) Class Counsel, however, do not provide the Court with any specific information or documentation regarding their expenses and hours worked. Accordingly, the Court declines to determine whether its request for attorneys' fees and costs is reasonable at this time.

### ii. *Incentive Award*

"Courts have generally found that $5,000 incentive payments are reasonable." Alberto, 252 F.R.D. at 669. Class Counsel, however, have failed to provide any information regarding the "actions the plaintiff[s] have taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Staton, 327 F.3d at 977. Although an incentive award of $5,000 is generally reasonable, the Court cannot preliminarily approve such an award in a vacuum of evidence. Hence, the Court declines to approve the incentive award at this time.

### 6. **Product of Serious, Informed, Non-Collusive Negotiations**

As noted above, the proposed settlement between the Parties was reached only after the Parties litigated the lawsuit for more than two years and engaged in extensive discovery and motion practice. In addition, the proposed class relief terms were negotiated with the assistance of a third-party party mediator, Judge Edward A. Infante (Ret.) of JAMS, on October 25, 2016. (Doc. No. 218 at 2.) Following the mediation, Judge Infante held several telephonic mediation sessions with the parties to negotiate fees, which both Parties accepted on December 12, 2016. (Id.)

Give the history of litigation, there is no evidence to suggest the current settlement was the product of uninformed or collusive negotiations. See Ahdoot v. Babolat VS N. Am., Inc., No. CV 13-02823-VAP, 2015 WL 1540784, at *6 (C.D. Cal. Apr. 6, 2015) ("Settlements reached with the help of a mediator are likely non-collusive."); Satchell v. Fed. Express Corp., 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Accordingly, this factors weighs in favor of preliminary approval.

### 7. **Conclusion**

As almost all of the Hanlon factors weigh in favor of preliminary approval, the Court finds that the proposed settlement is "within the range of possible approval" and that notice should be sent to class members. Vasquez v. Coast Valley Roofing, Inc., 670 F. Supp. 2d 1125 (E.D. Cal. 2009). The Court stresses, however, that it will not approve the application for attorneys' fees and costs without more information as to whether the fee award is appropriate under the lodestar method and more documentation as to the expenses suffered by Class Counsel. Likewise, the Court will not approve the incentive award request without more documentation as to the duties performed by the named Plaintiffs throughout the litigation.

### C.  Notice Procedure

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Plaintiff must provide notice that is "timely, accurate, and informative." See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989).

#### 1.  Notice Form

The Court accepts the proposed notice form. The notice form explains in plain language what the case is about, what the recipient is entitled to, and what the recipient must do next. (Doc. No. 217-2 at 25; see also id. at 27-34.) The Notice states the class members' options—do nothing, opt out of the class, or object to the settlement—and describes the consequences attached to each decision. (Id.) In addition, the notice form will direct class members to the class website, which provides more information and details. (Id.)

#### 2.  Claims Administration

The Court finds that the proposed claims administration process is adequate. The settlement agreement states that the Class Administrator, Dahl Administration, will send the notice to all class members using Defendant's address data and the U.S. Post Office's National Change of Address database. (Doc. No. 217-2 at 9.) Defendant agrees to provide such data to Dahl Administration within 20 days of entry of this Order. (Id.) Dahl

Administration shall, within 30 days of receiving class members' address information, mail each identified class member a notice form. (Id.)

For all class members for whom the notice is returned with forwarding address information, Dahl Administration shall re-mail the notice to the new address indicated. (Id.) For all class members for whom the notice is returned without a forwarding address, Dahl Administration shall re-mail the notice to the best known address resulting from an advanced address search. (Id.) Defendant shall bear all costs and expenses reasonably incurred for providing notice to the class, complying with 28 U.S.C. § 1715, and administering the relief being provided to class members under the terms of the settlement agreement. (Id. at 10.)

## IV. CONCLUSION

For the reasons stated above, most of the factors considered by the Court favor preliminary approval of the class settlement. Although the Court declines to approve the requested attorneys' fees, costs, and service awards, the proposed settlement is within the range of possible final approval. The Court, therefore, GRANTS Plaintiff's Motion for Preliminary Approval, except as to the items noted.

The Court adopts the following schedule for final approval:

| Event | Deadline |
| --- | --- |
| Defendant to provide class member data to Dahl Administration | Twenty (20) days from the entry of this order |
| Dahl Administration will complete mailing of the class notice | Sixty (60) days from the entry of this order |
| Parties to file final approval papers and Class Counsel to file a fee application | Ninety-five (95) days from the entry of this order |
| Deadline for class members to opt-out or object to the settlement | One hundred and five (105) days from the entry of this order |
| Replies in support of final approval | One hundred and fifteen (115) days |

| | |
|---|---|
| and fee application | from the entry of this order |
| Defendant to file affidavit attesting that notice was disseminated as ordered | One hundred and fifteen (115) days from the entry of this order |
| Final approval hearing | 2:00 p.m. on August 14, 2017 |

**IT IS SO ORDERED.**

Dated: 3/23/17

Virginia A. Phillips
Chief United States District Judge

18