# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JS-6

FILED
CLERK, U.S. DISTRICT COURT

AUG 16, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

Jeff Looper, et al.,

                Plaintiffs,

v.

FCA US LLC, f/k/a Chrysler Group LLC, et al.,

                Defendants.

EDCV 14-00700-VAP (DTBx)

**Order GRANTING Plaintiffs' Motions for Final Approval of Class Settlement and Attorneys' Fees, Costs, and Service Awards [Doc. Nos. 222, 223]**

On June 26, 2017, Plaintiffs Michael Bright and Jeff Looper filed Motions for Final Approval of Class Settlement and for Attorneys' Fees, Costs, and Service Awards. (Doc. Nos. 222, 223.) On July 14, 2017, Defendant FCA US LLC ("FCA") filed a response to that motion, in which FCA stated that it agreed with Plaintiffs that the proposed class settlement should be approved by this Court. (Doc. No. 226.) On July 17, 2017, Plaintiffs filed a reply to update the Court on the class's reaction to the proposed settlement and reaffirmed their request that the Court grant final approval of the proposed class settlement. (Doc. No. 227.)

After consideration of the papers filed in support of the Motions for Final Approval of Class Settlement and for Attorneys' Fees, Costs, and Service Awards, the Court GRANTS the motions.

# I. BACKGROUND

## A. Procedural History

This case concerns a steering linkage defect in Defendant FCA US LLC, f/k/a Chrysler Group LLC's 2009-12 Dodge Ram trucks. (Doc. No. 222-1 at 7.) Specifically, the left tie rod ball stud in Defendant's vehicles' steering linkage systems was prone to fracture, resulting in a sudden loss of steering control. (Id.) The Parties do not dispute that, in November 2013, Defendant issued recalls that effectively remedied the design defect in question and agree that effective repairs were provided to all named plaintiffs. (Doc. No. 202 at 7.)

In April 2014, Plaintiffs Bright and Looper, together with Texas Plaintiff Scott Johnson, filed a complaint against Defendant alleging a variety of claims on behalf of a class of persons who owned or leased various 2009-12 Dodge Ram trucks. (Doc. No. 101.) Specifically, Plaintiffs Bright and Looper alleged claims under federal and California law for: violation of the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (Count I); violation of the California Song-Beverly Warranty Act, Cal. Civ. Code section 1791, et seq. (Count II); violation of the California Consumer Legal Remedies Act, Cal. Civ. Code section 1750, et seq. (Count III); violation of California Unfair Competition Law, Cal. Bus. & Prof. Code section 17200, et seq. (Count IV); negligent failure to warn (Count VI); negligent failure to test (Count VII); and negligent misrepresentation (Count VIII). Texas Plaintiff Johnson alleged a single claim under the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code section 17.46, et seq. (Id.)

The Parties litigated the case for well over two years. Defendant twice moved to dismiss Plaintiffs' claims (Doc. Nos. 27, 65), deposed Plaintiffs' experts (Doc. No. 222-1 at 7), and took extensive written discovery of the named plaintiffs (id.). Plaintiffs, for their part, obtained and reviewed more than 80,000 documents concerning the alleged defect, deposed Defendant's representative, supplier, and experts, and worked with their own experts to prepare for trial. (Doc. No. 218 at 2.) On October 25, 2016, the Court granted Defendant's Motion for Partial Summary Judgment as to all claims of Texas Plaintiff Scott Johnson. (Doc. No. 202.)

On March 23, 2017, the Court granted Plaintiffs Bright and Looper's Motion for Preliminary Approval of Class Action Settlement but noted that it would not approve the Parties' fee agreement without more information "as to whether the fee award is appropriate under the lodestar method and more documentation as to the expenses suffered by Class Counsel." (Doc. No. 221 at 6.) Plaintiffs now move for final approval of the class action settlement and their attorneys' fees, costs, and service awards.

**B.     Settlement Class**

The proposed class is defined as:

All individuals who purchased a new Class Vehicle in California between July 1, 2009, and November 6, 2013, and who were not eligible for the Repurchase Program remedies provided under Paragraph 35 of the Consent Order entered into between FCA US

LLC and the National Highway Traffic Safety Administration on July 24, 2015.

(Doc. No. 217-2 at 4.)

"Class Vehicle" refers to the following 2009-12 Dodge Ram trucks: 2500 4x4 manufactured between July 1, 2009, and January 21, 2012; 3500 4x4 manufactured between July 1, 2009, and December 22, 2012; 3500 Cab Chassis 4x2 and 4x4 manufactured between July 1, 2009, and December 22, 2012; 4500 manufactured between July 1, 2009, and December 22, 2012; and 5500 manufactured between July 1, 2009, and December 22, 2012. (Id.)

The proposed class does not include purchasers of used trucks or lessees (who will not be releasing any claims) and vehicle owners who were already offered benefits under Chrysler's Repurchase Program. (Doc. No. 222-1 at 9.)

### C. Settlement Terms

Under the proposed settlement, Defendant will pay $250 to each class member who purchased a 4500/5500 Class Vehicle in California and $195 to each class member who purchased a 2500/3500 Class Vehicle in California. (Doc. No. 217-2 at 7.) Defendant shall mail each class member a check in the amounts above, and there will be no need for class members to submit a claim. (Id.) All checks will be sent within 30 days of the final settlement approval and will remain valid for 90 days from issuance.[1] (Id. at 4, 7.) Defendant will retain the funds from all checks that are not validly presented for payment. (Id.)

---

[1] The Parties stipulated to check validity period of 90 days at the hearing on the present motions.

4

In addition to mailing class members the checks, Defendant will also provide them with an extended warranty. (Id. at 7-8.) Defendant's Basic Limited Warranty is a three-year/36,000-mile warranty. (Doc. No. 222-1 at 10.) Under the settlement, Defendant's Basic Limited Warranty will be extended to cover steering-linkage parts installed pursuant to the recall repairs as well as the labor undertaken to install them until January 1, 2018, regardless of the vehicle's age or mileage. (Doc. No. 217-2 at 8.)

In exchange for the compensation Defendant will provide pursuant to the settlement, participating class members will release all claims asserted in the Third Amended Complaint, as well as all claims that could have been brought based on the facts alleged in the Third Amended Complaint. (Id. at 13-14.) That release does not affect the rights of persons who timely and properly request exclusion from the class and will not affect any claims that arise out of a consumer's purchase of a used Class Vehicle, lease of a Class Vehicle, purchase of a Class Vehicle outside of California, or purchase of any Class Vehicle that was eligible for the Repurchase Program. (Id. at 14.) Moreover, the settlement agreement does not release claims for personal injury or property damage. (Id.)

Finally, Defendant has agreed to pay a total of $1,800,000 for attorneys' fees, costs, and class representative service awards. (Id. at 15.) From that payment, the two class representatives will receive $5,000 each for their services. (Id.)

## II.  DISCUSSION

**A.  Final Approval of the Settlement**

5

### 1. Approval of the Settlement Terms

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted).

"[T]he settlement may not be the product of collusion among the negotiating parties." Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.), 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted). In addition, a court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

1. the strength of the plaintiff's case;
2. the risk, expense, complexity, and likely duration of further litigation;
3. the risk of maintaining class action status throughout the trial;
4. the amount offered in settlement;
5. the extent of discovery completed, and the stage of the proceedings;
6. the experience and views of counsel;
7. the presence of a governmental participant; and
8. the reaction of the class members to the proposed settlement.

Torrisi, 8 F.3d at 1375.

The factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances. Id. at 1376. In some instances, "one

factor alone may prove determinative in finding sufficient grounds for court approval." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525–26 (C.D. Cal. 2004); Id.

### a. Non-Collusive Negotiations

The proposed settlement between the Parties was reached only after the Parties litigated the lawsuit for more than two years and engaged in extensive discovery and motion practice. In addition, the proposed class relief terms were negotiated with the assistance of a third-party mediator, Judge Edward A. Infante (Ret.) of JAMS, on October 25, 2016. (Doc. No. 218 at 2.) Following the mediation, Judge Infante held several telephonic mediation sessions with the Parties to negotiate fees, which both Parties accepted on December 12, 2016. (Id.)

Give the history of litigation, there is no evidence to suggest the current settlement was the product of uninformed or collusive negotiations. See Ahdoot v. Babolat v. N. Am., Inc., Nos. CV 13-02823-VAP (VBKx), CV 13-07898-VAP (VBKx), 2015 WL 1540784, at *6 (C.D. Cal. Apr. 6, 2015) ("Settlements reached with the help of a mediator are likely non-collusive."); Satchell v. Fed. Express Corp., Nos. C 03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Accordingly, this factors weighs in favor of final approval.

### b. Strength of the Plaintiffs' Case and Future Risks[2]

---

[2] As the first three Hanlon factors—strength of the plaintiff's case; the risk, expense, complexity, and likely duration of future litigation; and the risk of

Plaintiffs may have a strong case for liability. As discussed in this Court's order on Defendant's Motion for Partial Summary Judgment, Plaintiffs have evidence to show that (i) the class vehicles were sold with defective steering linkages, and (ii) Defendant may have known about the defect and sold the vehicles anyway. (See generally Doc. No. 202.) Plaintiffs contend that evidence also establishes that the defect posed an unreasonable safety risk. (Doc. No. 222-1 at 12.)

Damages, however, are more uncertain. As noted above, the Parties do not dispute that, in November 2013, Defendant issued recalls that effectively remedied the design defect in question. (Doc. No. 202 at 7.) Those recalls were provided to Plaintiffs. (Id.) In its partial summary judgment order, the Court rejected Texas Plaintiff Johnson's benefit-of-the-bargain damages theory because those recalls left Plaintiffs "in essentially the same position [they] would have been in had Defendant sold [them] a non-defective truck." (Id. at 14.) Although the Court's rejection of Texas Plaintiff Johnson's damages theory was limited to his Texas DTPA claim, the Court relied in part on two federal district court cases interpreting California law to reach its decision. (Id. at 14-15 (citing In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig., 288 F.R.D. 445, 449-50 (C.D. Cal. 2013); Waller v. Hewlett-Packard Co., 295 F.R.D. 472, 487-88 (S.D. Cal. 2013)).) Under those circumstances, Plaintiffs' similar claims under California law could be viewed as weak. At the very least, Plaintiffs would have assumed the "substantial risk of incurring the expense of a trial without any recovery." In re Toys 'R' Us FACTA Litig., 295 F.R.D. at 451.

---

maintaining class action status throughout the trial—are interrelated, the Court discusses them together here. Hanlon, 150 F.3d at 1026.

Moreover, before granting preliminary approval, the Court had not yet certified a class in this case. Where there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement. See, e.g., Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009). Given the relative strength of Plaintiffs' claims and the risks and costs associated with future complex litigation, the settlement agreement's terms appear to be reasonable. Hence, these factors favor final approval.

### c. Amount Offered in the Settlement

Defendant must pay $250 to each class member who purchased a 4500/5500 Class Vehicle in California and $195 to each class member who purchased a 2500/3500 Class Vehicle in California. (Doc. No. 217-2 at 7.) Plaintiffs' expert, Edward M. Stockton, estimated the point-of-sale harm suffered by class members to be $315 for each 4500/5500 Class Vehicle and $246 for each 2500/3500 Class Vehicle. (Doc. Nos. 154-18 at 10, 171-1 at 9.) Stockton acknowledged the possibility that those amounts would need to be discounted to account for the fact that Defendant did eventually provide class members with safe and fully-functional vehicles. For example, Stockton estimated damages to be $173.25 for an owner of a 2011 Dodge Ram 5500 who had driven 60,000 miles by the time Defendant offered an effective repair. (Doc. Nos. 154-18 at 11-12, 171-1 at 10-11.)

Considering the present value of the settlement amount, the probability of lengthy litigation in the absence of a settlement, the risk that Plaintiff and the Class members would not have been able to succeed at trial, and the risk that a jury could award damages less than the awards offered by Defendant, the Court finds the

settlement payments to participating class members are within the range of reasonableness to warrant final approval.

### d. Extent of Discovery Taken in the Case

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney v. Cellullar Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998). As noted above, the Parties litigated diligently for more than two years, including engaging in extensive discovery and motion practice. (Doc. No. 218 at 2.) Accordingly, the Court finds this factor weighs in favor of final approval. See Linney, 151 F.3d at 1239.

### e. Experience and Views of Counsel

Class Counsel has ample experience litigating class actions similar to this case and has demonstrated the ability to prosecute vigorously on behalf of the class members. (Doc. No. 218 at 2.) Class Counsel believes the settlement is "an excellent result for the class and recommend[s] its approval." (Id.) Accordingly, the Court finds this factor weighs in favor of final approval.

### f. Presence of a Governmental Participant

There is no governmental participant in this action. Thus, this factor is irrelevant for the purposes of final approval.

### g. Reaction of Class Members to the Settlement

The settlement administrator, Dahl Administration, mailed notices to 6652 class members and activated a class website and an automated interactive telephone line for class members. (Doc. No. 226-2 at 3.) No class members objected to the settlement. (Id. at 4.) The settlement administrative received 20 requests for exclusion, but only nine of those were from actual members of the class. (Id. at 3.) The opt-out rate is thus approximately 0.001%.[3]

Where "the overwhelming majority of the class willingly approved the offer and stayed in the class," there is "at least some objective positive commentary as to its fairness." Hanlon, 150 F.3d at 1027. This factor, therefore, favors final approval of the settlement.

### h. Balance of Factors

The Court finds that the balance of the factors favors final approval and that the settlement agreement is fair, reasonable, and adequate. Accordingly, the Court GRANTS final approval of the settlement.

### 2. Approval of Notice Procedures

Rule 23 requires the Court to direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In

---

[3] Class Counsel notes that one of the nine class member opt-out requests was not postmarked until July 7, 2017, one day after the deadline. (Doc. No. 227 at 3.) That class member, however, e-signed the request on the deadline and the delay in mailing the objection appears to be the fault of his attorney. (Id.) Accordingly, the Court finds that, in the interests of justice, that opt-out request should nonetheless be treated as valid.

addition, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment. Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs must provide notice to potential opt-in class members that is "timely, accurate, and informative." See Hoffmann-La Roche v. Sperling, 493 U.S. 165, 172 (1989). Likewise, claim forms must be informative and accurate. Id. at 172; Churchill Vill., L.L.C. v. GE, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard") (citation omitted).

The Court previously accepted the proposed notice form and administration procedures. (Doc. No. 221 at 16.) According to Kelly Kratz, a Principal at Dahl Administration, notice was disseminated through procedures that were in conformity with the Court's preliminary approval order. (Doc. No. 61–1 at 3-4.) Given Kratz's representations, the Court finds that the Notice was reasonable as to its content and the method of communication. Accordingly, the Court approves the notice procedures.

**B.      Attorneys' Fees, Costs, Service Awards**

Class Counsel requests final approval of the attorneys' fees, costs, service awards. The Court addresses each below.

**1.      Attorneys' Fees and Costs**

Notwithstanding an explicit agreement to shift attorneys' fees in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.), 654 F.3d 935, 941 (9th Cir. 2011).

Class Counsel seeks to establish its attorneys' fees agreement is reasonable using the lodestar method. "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011). Here, the lodestar method is appropriate as Class Counsel brought this suit under two California fee-shifting statutes: the California Consumers Legal Remedies Act, Cal. Civ. Code § 1780(e), and the codification of the private attorney general doctrine, Cal. Code of Civ. Proc. § 1021.5. (Doc. No. 223-1 at 11.) See Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 566 (2004) ("In determining whether a plaintiff is a successful party for purposes of section 1021.5, the critical fact is the impact of the action, not the manner of its resolution.") (citation and alteration brackets omitted); Kim v. Euromotors West/The Auto Gallery, 149 Cal. App. 4th 170, 178-79 (2007) (holding that a plaintiff may be entitled to a fee under section 1780, "either because he obtained a net monetary recovery or because he achieved most or all of what he wanted by filing the action or a combination of the two").

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." In re Bluetooth Headset, 654 F.3d at 941. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). "State law established the required showing for attorney's fees in an action in diversity." Winterrowd v. American Gen. Annuity Ins. Co., 556 F.3d 815, 827 (9th Cir. 2009). "In California, an attorney need not submit contemporaneous time records in order to recover attorney fees. . . . The testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." Id. (citing Martino v. Denevi, 182 Cal. App. 3d 553, 559 (1986)) (alternation omitted); see also Lobatz v. U.S. West Cellular of California, Inc., 222 F.3d 1142, 1148-49 (9th Cir. 2000) (holding that, where there was no evidence of collusion, the district court did not abuse its discretion in relying on class counsel's documented costs and summaries of the time spent in lieu of contemporaneous time records or conducting a more intensive inquiry).

Class Counsel submitted several declarations noting the hours devoted to this litigation. (Doc. Nos. 224-2, 224-3, 224-4, 224-5, 224-6.) Pursuant to those declarations, the total hours Class Counsel spent on this litigation is 10,737.83. (Id.) Those declarations also detail the extensive litigation efforts of Class Counsel

over the course of this litigation, including: factual investigation of the Class Vehicles' tie rods, selection of and consultation with experts, researching relevant law, successful opposition of Defendants' motions to dismiss, extensive discovery, assisting Plaintiffs in preparations of written discovery responses, moving to certify the Class, opposing Defendant's motion for partial summary judgment, and representing the Class's interests in mediation. (Doc. No. 223-1 at 13-14.) Considering the technical and complex issues involved in this litigation, the Court finds that the hours devoted to this litigation were reasonable.

The hourly rates used to calculate Class Counsel's lodestar range from $515.00 to $825.00 for partners, $300.00 to $590.00 for associates, and $125.00 to $295.00 for paralegals. (Doc. No. 224 at 11.) In support of those figures, some members of Class Counsel submitted lists of cases in which their rates were approved as reasonable. (Doc. Nos. 224-2 at 4; 224-3 at 4-5.) The Court finds those cases insufficient to establish that the proposed rates are reasonable for all attorneys involved in this action. The Court, however, remains persuaded that the requested attorneys' fees award is reasonable due to the exceptionally low multiplier.[4]

Pursuant to the hours spent and the rates listed above, the total lodestar value of Class Counsel's services is $6,170,731.64, yet the total fees sought, minus service awards, is $1,790,000.00. (Doc. No. 223-1 at 15.) Those calculations yield

---

[4] Even if the Court were to slash all of the rates in half, the multiplier would merely double to 0.58, which remains less than one and thus suggests the negotiated fee is reasonable. See Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010).

a multiplier of 0.29. "This resulting multiplier of less than one, (sometimes called a negative multiplier) suggest that the negotiated fee award is reasonable and fair valuation of the services rendered to the class by class counsel." Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010); see also Gong-Chun v. Aetna Inc., No. 1:09-CV-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) ("This implies a negative multiplier of .79 . . ., which suggests that the negotiated fee award is reasonable."); In re Portal Software, Inc. Sec. Litig., No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel."). The multiplier is even lower—0.22—if the Court first subtracts the $462,969.11 in costs that Class Counsel incurred throughout this litigation. See Katz v. China Century Dragon Media, Inc., No. No. 11-cv-08276-JAK, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) ("Class Counsel are entitled to reimbursement for out-of-pocket expenses that would normally be charged to a fee-paying client.").

Accordingly, the Court finds that the request fee and cost award of $1,790,000.00 is reasonable and approves the award.

### 2. Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958–59. "The district court must evaluate [incentive] awards individually,

using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" Staton, 327 F.3d at 977. Courts may also consider: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995). "Courts have generally found that $5,000 incentive payments are reasonable." Alberto, 252 F.R.D. at 669.

Here, Plaintiffs Bright and Looper each submitted to depositions, took time off work to deliver their vehicles to Defendant for inspection, searched for and produced documents (including their private tax returns) and worked with class counsel to provide detailed responses to multiple sets of written discovery. (Doc. No. 224 at 13.) Given Plaintiffs Bright and Looper's level of involvement, the Court finds that a $5,000.00 incentive award is appropriate in this case and approves the award.

### III.  CONCLUSION

For the reasons stated above, the Court GRANTS the Motions for Final Approval of Class Settlement and for Attorneys' Fees, Costs, and Service Awards.

**IT IS SO ORDERED.**

Dated: 8/16/17

_Virginia A. Phillips_
Virginia A. Phillips
Chief United States District Judge

United States District Court
Central District of California